JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

TODD AARON, M.D.

**(b)** County of Residence of First Listed Plaintiff: Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
J. Kurt Straub, Esq. - Obermayer Rebmann Maxwell&Hippell, LLP
Centre Square West, Ste.3400, 1500 Market St., Philadelphia, PA 19102
(215) 665-3000

**DEFENDANTS**

State Farm Fire and Casualty Company

County of Residence of First Listed Defendant: McLean, IL
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Yolanda Konopacka, DeSipio, Esq. Bennett, Bricklin & Saltzburg, LLC
960 Harvest Dr., Bldg. B., Ste. 100, Blue Bell, PA 19422
(267)654-1116

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)* Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☒ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 28 U.S.C. § 1332, 1441 & 1446

Brief description of cause:

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ >75,000.00

CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*: JUDGE ______ DOCKET NUMBER ______

DATE 6/9/17 SIGNATURE OF ATTORNEY OF RECORD [signature]

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

TODD AARON, M.D. : CIVIL ACTION

v. :

STATE FARM FIRE AND CASUALTY COMPANY : NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (X)

| 6/9/17 | Yolanda Konopacka DeSipio | DEFENDANT |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (267) 654-1116 | (267) 654-1122 | desipio@bbs-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 605 Bartram Court, Flourtown, PA 19031

Address of Defendant: State Farm Fire and Casualty Company, One State Farm Plaza, Bloomington, IL 61701-0001

Place of Accident, Incident or Transaction: 307 Barren Hill Road, Conshohocken, PA 19428 Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a) Yes ☐ No X

Does this case involve multidistrict litigation possibilities? Yes ☐ No X

RELATED CASE, IF ANY:
Case Number: ________ Judge ________ Date Terminated: ________

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes ☐ No X

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes ☐ No X

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court? Yes ☐ No X

Civil: (Place ✔ in ONE CATEGORY ONLY)

A. Federal Question Cases:

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify) ________

B. Diversity Jurisdiction Cases:

1. X Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) ________

ARBITRATION CERTIFICATION
(Check Appropriate Category)

I, ________, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: ________ ________ Attorney-at-Law ________ Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 6/9/17 Yolanda Konopacka DeSipio, Attorney-at-Law 62170 Attorney I.D.#

CIV. 609 (5/2012)

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TODD AARON, M.D. | : | CIVIL ACTION |
| vs. | : | No: |
| STATE FARM FIRE AND CASUALTY COMPANY | : | Jury Trial of 12 Demanded |

**NOTICE FOR REMOVAL OF CIVIL ACTION FROM STATE COURT**

AND NOW, comes Defendant, State Farm Fire and Casualty Company (hereinafter "Defendant" or "Defendant State Farm") for the purpose of removing the case to the United States District Court for the Eastern District of Pennsylvania and respectfully avers as follows:

1. This is a civil action filed and now pending in the Court of Common Pleas of Montgomery County, Pennsylvania, April Term 2017, Docket No. 2017-07615.

2. Said action was commenced by the filing of a Civil Action Writ of Summons on April 13, 2017.

3. On May 23, 2017, plaintiff filed a Complaint setting forth the facts and basis for plaintiff's claims against Defendant. A copy of plaintiff's Complaint is attached hereto and made a part hereof, without admission or adoption, and is marked as Exhibit "1".

4. The averments made herein are true and correct with respect to the date on which suit was commenced and the date upon which this notice is being filed.

5. This suit is of a civil nature and involves a controversy between citizens of different states.

6. Plaintiff, upon information and belief, is a citizen of the Commonwealth of Pennsylvania.

7.    Defendant is now, and was at the time plaintiff commenced this action and filed the Complaint, a corporation organized under the laws of the State of Illinois, with its principal place of business at One State Farm Plaza, Bloomington, Illinois. See Affidavit, attached hereto as Exhibit "2". Therefore, Defendant is a citizen of the State of Illinois. See, e.g. Baldridge v. Amica Mutual Ins. Co., 2017 WL 2271561 (W.D.Pa. 2017) (explaining citizenship of defendant insurer is in state of incorporation and state of principal place of business, and recognizing "universal rule" that "direct action" exception of 28 U.S.C. § 1332(c)(1) only applies to cases where a third-party tort victim sues tortfeasor's liability insurer directly instead of tortfeasor himself); See also Myers v. State Farm Ins. Co., 842 F.2d 705, 707 (3rd Cir. 1988) (abrogated on other grounds by Brennan v. Gen. Accident Fire and Life Assurance Corp., 574 A.2d 580 (Pa. 1990)); Chiaravalle v. Imperium Ins. Co., 2013 WL 4012552 (D.N.J. 2013); State Farm Ins. Co. v. Evans, 712 F. Supp. 57 (E.D.Pa. 1989); Morehead v. Nat'l Union Fire Ins. Co. of Pitt., 2007 WL 2790768 (D.N.J. 2007).

8.    Defendant has simultaneously with the filing of this notice, given written notice to plaintiff's counsel.

9.    Defendant is also filing a copy of the instant notice of removal and all attachments thereto with the Prothonotary of the Court of Common Pleas of Montgomery County.

10.    Defendant seeks to remove this matter to the United States District Court for the Eastern District of Pennsylvania. Defendant asserts that the amount in controversy in this matter exceeds $75,000 based on plaintiff's Complaint. As the moving party, defendant bears the burden of proving that jurisdiction is proper in federal court. Russ vs. State Farm Mut. Auto. Ins. Co., 961 F.Supp. 808, 810 (E.D. Pa. 1997).

11.    In determining whether the jurisdictional amount has been satisfied, the Court must first look at the Complaint. Angus vs. Shiley, Inc., 989 F.2d 142, 145 (3rd Circ. 1993).

12.    The Complaint asserts three causes of action against Defendant: (1) Breach of Contract (Count I); (2) "Breach of Covenant of Good Faith and Fair Dealing and Breach of Fiduciary Duty" (Count II); and (3) Statutory Bad Faith pursuant to 42 Pa.C.S.A. § 8371 (Count III).

13.    The underlying lawsuit as alleged in the Complaint arises out of Defendant's handling of a loss at plaintiff's property located at 307 Barren Hill Road, Conshohocken, PA 19428. See Exhibit "1". The loss allegedly arose from a storm on July 23, 2016, during which a tree fell and struck the property, allegedly causing significant damages to the property and related damages. See id.

14.    Plaintiff's Complaint alleges "direct casualty loss damages" from the subject loss of "at least" $157,428.73 in repair damages to the subject property; $6,629.29 in pool repairs; and $16,425.00 in personal property damages. See Exhibit "1", at ¶ 66.

15.    Plaintiff's Complaint alleges ongoing Additional Living Expense damages from the subject loss in the amount of $3,200/month plus utilities since April 13, 2017, in the current of amount of approximately $6,400.00. Id. at ¶ 70.

16.    Plaintiff's Complaint at Count I (Breach of Contract) also alleges past lost earnings of "approximately $120,000.00 to date", as well as unspecified future lost earnings. Id. at ¶ 72-73.

17.    Thus, while Defendant denies any liability to plaintiff and denies that plaintiff is entitled to recover the damages alleged in the Complaint, the contractual amount in controversy between the parties is presently approximately at least $306,833.02.

18.    Further, all three counts of the Complaint contain a demand for punitive damages against Defendant. See id. at ¶ 74, 80 and the *Ad Damnum* clauses of all three counts.

19.    Whether both actual and punitive damages are recoverable, punitive damages are properly considered in determining whether the jurisdictional amount has been satisfied. Bell vs.

Preferred Life Assurance Soc'y, 320 U.S. 238, 240, 88 L. Ed. 15, 64 S. Ct. 5 (1943). If plaintiff is able to sustain a finding of punitive damages and/or bad faith, although the propriety of same is specifically denied by moving Defendant, it is not unreasonable to expect that a punitive damage award five or six times the amount in controversy, or beyond, could be rendered by the trier of fact.

20. "If appropriately made . . . claims for punitive damages will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum." Huber v. Taylor, 2008 WL 2697774, 3 (3rd Cir. 2008)(citing to Golden ex rel. Golden v. Golden, 382 F.3d 348 (3rd Cir. 2004) (abrogated on other grounds by Marshall v. Marshall, 126 S.Ct. 1735 (2006)).

21. In addition, all three counts of the Complaint assert a claim for attorneys' fees against Defendant. See id. at ¶ 73, 79 and the *Ad Damnum* clauses of Counts II and III.

22. While plaintiff's entitlement to such damages is specifically denied by Defendant, attorney's fees must be included in determining the amount in controversy. Neff vs. General Motors Corp., 163 F.R.D. 478, 482 (E.D. Pa. 1995). It would not be unreasonable to expect that over the course of an approximate nine month litigation of this nature, counsel could incur costs and fees in an amount approaching $30,000.

23. Given plaintiff's claims for Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing and Breach of Fiduciary Duty, and bad faith, coupled with plaintiff's demand for punitive damages and attorney's fees, the amount in controversy in this case is clearly in excess of the $75,000 jurisdictional threshold for removal to Federal Court, in accordance with 28 § 1332(a).

24. Defendant reiterates its demand for a jury trial of twelve.

WHEREFORE, Defendant, State Farm Fire and Casualty Company, hereby removes this suit to this Honorable Court pursuant to the laws of the United States in such cases made and provided.

By:____________________________

**YOLANDA KONOPACKA DESIPIO, ESQUIRE**
**ROBERT T. GROLNICK, ESQUIRE**
**Attorneys for Defendant**
**Attorney ID Nos: 62170/82173**
**BENNETT, BRICKLIN & SALTZBURG LLC**
**960 Harvest Drive**
**Building B, Suite 100**
**Blue Bell, PA 19422**
**(267) 654-1100**

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TODD AARON, M.D. | : | |
| | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | No: |
| STATE FARM FIRE AND | : | |
| CASUALTY COMPANY | : | Jury Trial of 12 Demanded |

**NOTICE OF REMOVAL**

**TO:** J. Kurt Straub, Esquire
Tricia A. Swann, Esquire
Obermay Rebmann Maxwell & Hippell, LLP
Centre Square West, Suite 3400
1500 Market Street
Philadelphia, PA 19102

PLEASE TAKE NOTICE that defendant, State Farm Fire and Casualty Company, has filed in this Court a verified Notice for Removal of the State Court action, Todd Aaron, M.D. v. State Farm Fire and Casualty Co., now pending in the Court of Common Pleas of Montgomery County, Pennsylvania, at docket number 2017-07615.

PLEASE TAKE FURTHER NOTICE that a certified copy of the Notice of Removal will be filed with the Prothonotary of the Court of Common Pleas of Montgomery County, Pennsylvania.

PLEASE BE ADVISED that by virtue of 28 U.S.C. §1446(f), the State action is now removed to this Court. The State Court has no further jurisdiction over this action and you should proceed no further in that Court or under its authority.

By:____________________________

**YOLANDA KONOPACKA DESIPIO, ESQUIRE**
**ROBERT T. GROLNICK, ESQUIRE**
**Attorneys for Defendant**
**Attorney ID Nos: 62170/82173**
**BENNETT, BRICKLIN & SALTZBURG LLC**
**960 Harvest Drive**
**Building B, Suite 100**
**Blue Bell, PA 19422**
**(267) 654-1100**

**DATE:** 6/9/17

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TODD AARON, M.D. | : | CIVIL ACTION |
| vs. | : | No: |
| STATE FARM FIRE AND CASUALTY COMPANY | : | Jury Trial of 12 Demanded |

**DEFENDANT'S CERTIFICATION OF FILING OF COPY OF NOTICE OF REMOVAL WITH STATE COURT**

I, being duly sworn according to law, state that I am an attorney with the law firm of Bennett, Bricklin & Saltzburg LLC, attorneys for defendant, State Farm Fire and Casualty Company; and that I did direct the filing with the Prothonotary of the Court of Common Pleas of Montgomery County a copy of the Notice of Removal, attached hereto, said filing to be made on or about June 9, 2017.

By:____________________

**YOLANDA KONOPACKA DESIPIO, ESQUIRE**
**ROBERT T. GROLNICK, ESQUIRE**
**Attorneys for Defendant**
**Attorney ID Nos: 62170/82173**
**BENNETT, BRICKLIN & SALTZBURG LLC**
**960 Harvest Drive**
**Building B, Suite 100**
**Blue Bell, PA 19422**
**(267) 654-1100**

**Sworn to and subscribed before me this 9th day of June, 2017.**

____________________
**NOTARY PUBLIC**

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DENISE M. PATSCH, Notary Public
City of Philadelphia, Phila. County
My Commission Expires October 24, 2017

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TODD AARON, M.D. | : | |
| | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | No: |
| STATE FARM FIRE AND CASUALTY CO. | : | |
| | : | Jury Trial of 12 Demanded |

**CERTIFICATE OF SERVICE**

I, being duly sworn according to law, state that I am an attorney with the law firm of Bennett, Bricklin & Saltzburg LLC, attorneys for defendant, State Farm Fire and Casualty Co., and that a true and correct copy of this Removal Petition was filed electronically and is available for viewing and downloading from the Electronic Case filing system, and that a copy has been served via United States Mail, postage pre-paid, which constitutes service upon the following counsel of record :

J. Kurt Straub, Esquire
Tricia A. Swann, Esquire
Obermayer Rebmann Maxwell & Hippell, LLP
Centre Square West, Suite 3400
1500 Market Street
Philadelphia, PA 19102

By: ____________________
**YOLANDA KONOPACKA DESIPIO, ESQUIRE**
**ROBERT T. GROLNICK, ESQUIRE**
**Attorneys for Defendant**
**Attorney ID Nos: 62170/82173**
**BENNETT, BRICKLIN & SALTZBURG LLC**
**960 Harvest Drive**
**Building B, Suite 100**
**Blue Bell, PA 19422**
**(267) 654-1100**

**Sworn to and subscribed before me this 9th day of June, 2017.**

____________________
**NOTARY PUBLIC**

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DENISE M. PATSCH, Notary Public
City of Philadelphia, Phila. County
My Commission Expires October 24, 2017

**AFFIDAVIT**

I, being duly sworn according to law, do hereby depose and state that I am an attorney for Defendant, State Farm Fire and Casualty Company, the Petitioner in the foregoing Notice of Removal, that I have been duly authorized by the Petitioner to execute this Affidavit, that I am familiar with the facts involved in this matter, and that the allegations set forth in the foregoing Notice of Removal are true and correct to the best of my knowledge, information and belief.

**YOLANDA KONOPACKA DESIPIO, ESQUIRE**
**ROBERT T. GROLNICK, ESQUIRE**

**DATE: June 9, 2017**

# EXHIBIT "1"

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

TODD AARON M.D.

vs.

STATE FARM FIRE AND CASULTY COMPANY

NO. 2017-07615

## NOTICE TO DEFEND - CIVIL

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY BAR ASSOCATION
100 West Airy Street (REAR)
NORRISTOWN, PA 19404-0268

(610) 279-9660, EXTENSION 201

PRIF0034
R 10/11

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

OBERMAYER REBMANN MAXWELL & HIPPEL LLP
BY: J. Kurt Straub, Esquire (Atty. ID No. 27722)
Tricia A. Swann, Esquire (Atty. ID No. 83716)
Centre Square West, Suite 3400
1500 Market Street
Philadelphia, PA 19102
Phone: (215) 665-3000
Facsimile: (215) 665-3165

Attorneys for Plaintiff,
Todd Aaron, MD

| | |
|---|---|
| **TODD AARON, MD**<br>**605 Bartram Court**<br>**Flourtown, PA 19031,**<br>*Plaintiff*<br><br>**v.**<br><br>**STATE FARM FIRE AND CASUALTY COMPANY**<br>**1003 Germantown Pike**<br>**Plymouth Meeting, PA 19462,**<br>*Defendant.* | **MONTGOMERY COUNTY COURT OF COMMON PLEAS**<br><br>**APRIL TERM, 2017**<br><br>**NO. 2017-07615**<br><br>**COMPLAINT AND JURY TRIAL DEMAND** |

**COMPLAINT AND JURY TRIAL DEMAND**

Plaintiff, Todd Aaron, M.D. ("Plaintiff" or "Dr. Aaron"), by and through his counsel, Obermayer, Rebmann, Maxwell & Hippel LLP, files this Complaint against State Farm Fire and Casualty Company ("Defendant" or "State Farm"), and in support whereof states as follows:

**PARTIES**

1. Plaintiff is an adult individual owning a residence at 307 Barren Hill Road, Conshohocken, Pennsylvania 19428 (the "Home"), but currently residing at 605 Bartram Court, Flourtown, Pennsylvania 19031. Both the Home and Dr. Aaron's current residence are in Montgomery County, PA.

2. Upon information and belief, State Farm is a Pennsylvania corporation with an office at 1003 Germantown Pike, Plymouth Meeting, Montgomery County, Pennsylvania.

3. At all times relevant hereto, State Farm insured Dr. Aaron's Home, his personal property and the loss of use of his Home pursuant to State Farm Policy No. 78-PZ-7637-4 with effective policy period (the "Policy"). A copy of the Policy is attached as Exhibit "A."

4. Dr. Aaron is an "Insured" under the Policy.

5. Dr. Aaron purchased homeowners' insurance from State Farm to, among other things, protect his Home, personal property and his normal standard of living against the types of loss covered by the Policy.

6. At all times material hereto, Dr. Aaron has timely paid the premiums due thereunder and has complied with the terms and conditions of the Policy.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 42 Pa. C.S.A §§5301(a)(2) and 5322(a)(1)(i),(2), and (3) because Defendant is authorized to and regularly transacts business in Pennsylvania for the purpose of realizing pecuniary benefit; it carries on a continuous and systematic part of its business within Pennsylvania and; and the acts and omissions of the Defendant caused harm to Plaintiff and damage to his property within Pennsylvania.

8. Venue is proper in this court pursuant to Rule 2179(a)(2), (3) and (4) and (b)(1) and (2) of the Pennsylvania Rules of Civil Procedure insofar as Montgomery County, Pennsylvania is a place where the Defendant regularly conducts business, where

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

the cause of action arose, where the transaction or occurrence took place out of which the cause of action arose, where the plaintiff resides, and where property insured by State Farm is located.

## FACTS

9. On July 23, 2016, a freakishly powerful rain and wind storm (possibly a tornado, possibly a straight-line storm) occurred in the neighborhood of the Home, felling trees on multiple residential properties. Storm damage was so severe that Barren Hill Road was closed for much of the night for tree and debris removal. Wind speeds were estimated at 75-100 miles per hour.

10. The storm caused multiple trees on Dr. Aaron's property to be felled, including an extremely large oak tree located in the front of Dr. Aaron's Home. When it fell, it impacted directly onto the master bedroom and roof line above it, penetrating the structure and sending a shock wave of damage throughout the entire right side of the Home. The interior of the master bedroom, exposed to the elements, also suffered water damage from the rain.

11. The rain and wind storm caused other substantial damage to the Home, in-ground pool and equipment, the exterior compressor of the air conditioning system, and items of personal property kept in the master bedroom. Also, a second tree fell and struck Dr. Aaron's car, causing damage and loss of value thereto.

12. Due to the serious nature of the damage, Dr. Aaron's Home was rendered uninhabitable and remains in that condition presently.

13. The incident was promptly reported to State Farm, which accepted coverage for the loss without reservation.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

14. As a result of the Home's inhabitability, Dr. Aaron was forced to reside initially at a hotel for a two-month period, after which he moved to temporary rental housing, all with the approval of State Farm.

15. As per the Policy, State Farm agreed to pay Dr. Aaron's Alternative Living Expenses ("ALE"), and did so for several months, but with repeated delays and missed payments, before arbitrarily and improperly terminating the same, effective April 12, 2017, as discussed more fully below.

**State Farm's Failure To Pay For Full Repairs To The Home**

16. State Farm sent its agent, Mr. Gary L. Popolizio, to the Home for an inspection on August 5, 2016, after which Mr. Popolizio estimated the cost to repair the storm damage to the Home at: $119,111.16 Actual Cash Value and $131,185.96 Replacement Cost Value. Based thereon, in October of 2016, State Farm issued a Summary of Loss to Dr. Aaron via which it calculated his recoverable benefits towards the Home's repairs at the ACV estimate, $119,111.16, even though the Policy requires replacement cost. A copy of the Summary of Loss is attached at Exhibit "B." These funds ($119,111.16) were released by State Farm, but were mis-addressed (to the Barren Hill residence, where plaintiff was no longer residing) and were not received by plaintiff until October, 2016. Plaintiff deposited these funds into an escrow account held by the mortgage lender, Wells Fargo Bank, on October 12, 2016.

17. The $119,111.16 figure was based on the ACV estimate of GLP Construction Management, Inc. ("GLP") estimator, Gary Popolizio ("Popolizio"), dated September 13, 2016. A copy of this GLP estimate and report is attached at Exhibit "C."

18. Popolizio qualifies his estimate (at page 2 under the heading "PURPOSE") as merely those repairs visually observable during a walk-through inspection, as follows:

> "The intent of this report and my inspection was to provide a visual review of the observable conditions for the residence . . ."

19. Popolizio specifically notes (at page 7) that his estimate does *not* take into consideration the Home's structural and/or load bearing components—which requires a separate inspection by a qualified licensed professional, as follows:

> "This estimate is based upon the visible conditions available at the time of my review with the potential for some unforeseen items uncovered during the restoration process. . . Items regarding the building structure, components, or load bearing systems should be reviewed by an appropriate licensed design professional.
>
> This report does not constitute a full design review of the home and is based on the conditions noted at the time of my review. . ."

20. As per the recommendation of his mortgage holder, Wells Fargo Bank, Dr. Aaron obtained three (3) estimates for the Home's repair and reconstruction.

21. All three estimators reported that they could not accept a contract for the repair and reconstruction of the Home for the $119,111.16 payment authorized and released by State Farm, and declined to proceed with reconstruction on that basis.

22. One of these three estimators, Alex Davis-Booth of Holders Hill Property & Haywood Construction ("Davis-Booth"), subsequently provided a written estimate in the amount of $288,614.29 to do the work. A copy of Davis-Booth's estimate dated January 18, 2017 is attached at Exhibit "D."

23. Davis-Booth sent his estimate to State Farm with an explanation that Popolizio's estimate did not cover the entire construction scope of the necessary repairs. A copy of Davis-Booth's January 18, 2017 email is attached at Exhibit "E."

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

24. In his report, Davis-Booth notes his familiarity with the Home as a result of his inspection in March of 2016, just 4 months prior to the storm damage (for purposes of a contemplated addition to the Home), and noted the following observable conditions:

> "In walking the property after the storm I noticed many parts of the house, and not simply the area that was hit directly by the tree, were out of alignment and generally felt different and uneven: drywall had cracked, floors buckled, windows out of plumb, and now do not close tightly, and generally more of the house than one would expect had been damaged. After noticing that the floors now have a slope both on the 1st and 2nd level, we put a 6' level on obvious areas and we found pitch differences or about 1" over 6' in places that had definitely not been there before.

25. Furthermore, the Home's main ridge beam was impacted from the incident, which was one significant difference in the required repair absent from Popolizio's initial estimate. See Exhibit "D."

26. Additionally, and as confirmed by State Farm's estimator, Davis-Booth notes that, in order to access the extent of the structural damages, there must be removal of the roof finishes and 2nd floor ceiling and selective demolition to the 1st floor structure, including removal of the sub-floor. See Exhibit "D."

27. Davis-Booth concluded that the overall most cost-effective way to accomplish the necessary repair and reconstruction of the Home was to remove the 2nd floor structure and re-frame the flooring to level it and construct a new 2nd story, at which time it can be determined whether to add new joists alongside the existing joists or add a leveling structural layer to the 1st floor. See Exhibit "D."

28. For purposes of the remediation of water damage to the master bedroom of the Home (penetrated by the large tree), State Farm recommended a contractor to Dr. Aaron, "Service – Master of Bux-Mont," whom Dr. Aaron admitted to the Home for that

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

purpose, water remediation in the master bedroom. Without Dr. Aaron's prior knowledge, approval or consent, the contractor entered the basement of the Home, despite the absence of any water in the basement. The contractor tore up the basement, for no good reason or purpose, which resulted in severe damage to the basement.

29. In or about late September or early October, State Farm released to Dr. Aaron a check for $6,184.47 to cover the invoice of Service-Master which Dr. Aaron also deposited in the Wells Fargo escrow account on October 12, 2016.

30. Although the basement damage inflicted by the water mediation contractors was present and evident at the time of Mr. Popolizio's first inspection, he failed to take it into account in his initial repair estimate.

31. Only after numerous complaints by Dr. Aaron did State Farm authorize a second inspection by Mr. Popolizio to the Home to assess basement damage and repair. Following this second inspection, on January 13, 2017, Mr. Popolizio prepared a supplemental estimate of home repairs, to include the damage to the basement inflicted by the water remediation contractor, which resulted in a new ACV of $128,778.67 and a new RCV of $141,166.41. Again State Farm adopted the lower ACV values and released a payment of $9,657.61 to cover the basement repairs, but waiting until late February or early March, 2017 to do so, which check Dr. Aaron deposited in the Wells Fargo escrow account on March 7, 2017.

32. By letter dated January 19, 2017 to Dr. Aaron, State Farm threatened to deny coverage in whole or part, advising Dr. Aaron that their "expert" had made an inspection of the Home on January 13, 2017 and reported that the tarp over the exposed portion of the Home had "become loosened." State Farm continued: "[a]s stated in your

5153124

policy, you have the duty to protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property" and quoted a section of the policy regarding "neglect."

33. Despite State Farm's threat to disclaim coverage, Dr. Aaron has taken all reasonable steps to protect the Home from any further damage, including not only the tarp, but the placement and continual running of two large dehumidifiers, all at his own expense.

34. Since that time, Dr. Aaron has repeatedly requested State Farm to authorize payment of the actual amounts necessary to repair and reconstruct the Home to include the structural and load-bearing components so that he could pay a contractor to begin construction. State Farm has wholly failed and refused to do so.

35. Only after repeated insistence that State Farm address the repair to the Home's structural and load-bearing components, did State Farm send Mr. Popolizio to conduct a third inspection, on March 17, 2017, ostensibly for that purpose.

36. Following this inspection, Plaintiff made repeated requests for State Farm's position on whether it intended to provide coverage for the structural repairs needed for the Home, but State Farm has taken the position that its estimate is final.

37. Popolizio's March 2017 "inspection" was, similar to his previous inspections, limited to observable conditions in the interior of the Home and, thus, could not reliably assess structural damage. The third inspection was actually conducted to form a pretextual "basis" to disclaim any further coverage, as confirmed by Popolizio's April 18, 2017 report, which provides:

> "The intent of this additional supplemental report and my third site inspection was to meet with Mr. Alex Davis-Booth at the property

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

to provide a review of the *observable conditions* . . ."

A copy of Popolizio's April 18, 2017 report is attached at Exhibit "F."

38. Popolizio's April 18, 2017 report further indicates that the opinions set forth in his initial report "remain as previously stated"—thereby confirming that his estimate is in consideration of only visually observable conditions with the potential for unforeseen items uncovered during the restoration process and, further, did not fairly inspect for or contemplate the integrity of the Home's structural and load-bearing components.

39. To date, State Farm has refused Popolizio's recommendations with regard to the retention of a licensed professional to address the Home's structural and load-bearing components in complete disregard of Dr. Aaron's safety and well-being and in breach of State Farm's obligations as set forth on The Policy.

40. Outside the home, Dr. Aaron's automobile was damaged by a second tree which fell on it. The compressor of the air conditioning system was damaged in the storm and no longer cools air. The outdoor pool was severely damaged as considerable amounts of storm and tree debris fell into the pool, which wrecked the pool's cleaning and filtration mechanical systems.

41. State Farm denied payment of $6,629.29 in costs incurred by Dr. Aaron to repair his outdoor pool which was damaged by the July 23, 2016 storm.

42. State Farm's initial stated reason for denial was that the pool was "operational" during Popolizio's August 5, 2016 inspection. It was operational, because the pool repairs were made by Dr. Aaron's contractor on July 28th-30th, prior to

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Popolizio's inspection. See copy of Fletcher Masonry & General Construction invoice at Exhibit "G."

43. State Farm then persisted in the denial of payment of pool repair costs by claiming that the equipment replacement "seemed to have been conducted in 2015, which was prior to the fallen tree event," which conclusion was false, without basis and contrary to known facts.

44. Similarly, State Farm has refused to acknowledge the breakdown of the A/C compressor, and without any rational basis denied payment to replace same.

**State Farm's Failure To Promptly Pay And Improper Termination Of Plaintiff's Additional Living Expenses**

45. Although State Farm accepted that the Home was uninhabitable and agreed to pay Dr. Aaron's alternate housing expenses (termed "Additional Living Expenses" or "ALE" in the Policy), State Farm was repeatedly late in payment of both rent and utilities, even while they were paying same.

46. As a result of State Farm's failure to timely pay Dr. Aaron's rent and utility expenses, Dr. Aaron has been caused to endure substantial inconvenience and expense, including numerous late charges and including three separate occasions during the first two months, in the hotel, when Dr. Aaron found himself locked out of his hotel room due to State Farm's nonpayment, each time with his dog still inside the locked room.

47. In addition to State Farm's failure to make timely payments, State Farm refused to pay Dr. Aaron's utility expenses until he produced copies of his Home's utility expenses for a two-year period leading up to the July 2016 storm damage.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

48. As a result of State Farm's actions in breach of contract, Dr. Aaron has spent considerable time and experienced substantial aggravation in making repeated contacts with State Farm representatives in order to effect payment so that he was not evicted from his temporary housing.

49. Despite the fact that Dr. Aaron had still not received payment from State Farm for necessary structural repairs, thereby preventing the commencement of the Home's reconstruction repairs, on December 12, 2016, State Farm notified Dr. Aaron that it intended to cease paying his living expenses as of March 12, 2017 on the stated basis that State Farm determined that the Home "should be restored to live in four months from the date of the actual cash value payment made." (The payment made was authorized on September 23, 2016 and released sometime later in October, 2016.) See State Farm's letter at Exhibit "H."

50. Even assuming that State Farm had authorized sufficient funds to repair and reconstruct the home, which they have never done, the four-month allotment of time to do so was arbitrary and capricious. At no point has State Farm's chosen expert, Mr. Popolizio, indicated in any of his reports that, with adequate funding, the House could be reconstructed in a four-month period.

51. State Farm's decision to terminate ALE payments was arbitrary and capricious, especially in light of the fact that State Farm had not disbursed sufficient funds to initiate the Home's repairs and reconstruction.

52. Subsequently, by letter dated March 14, 2017, State Farm then took the position that it would pay ALE coverage for a period of four months from the date of

their December 12, 2016 letter, thereby extending ALE coverage until April 12, 2017. See copy of State Farm's letter at Exhibit "I."

53. State Farm's termination of ALE coverage occurred before Popolizio issued his supplemental report dated April 18, 2017—evidencing that State Farm had no intent to provide ALE coverage beyond April 12, 2017, regardless of the outcome of their agent's March 17, 2017 inspection.

54. State Farm's termination of ALE coverage is in direct breach of the Policy ("Coverage C – LOSS OF USE"), which provides such coverage for the shorter period of either the time required to repair the premises or 24 months. Here, State Farm refuses to issue sufficient payment for repairs and reconstruction of the Home, so that these repairs have not been made. State Farm remains obligated to pay Dr. Aaron's living expenses, which it ceased doing on April 12th.

**State Farm's Failure To Pay Personal Property Loss**

55. As a further result of the incident, Dr. Aaron incurred substantial damage to personal property, for which he submitted a claim to State Farm for payment.

56. Dr. Aaron's personal property loss includes, inter alia, the following:

| | |
|---|---|
| Armstrong A/C condenser: | $2,400 |
| Toshiba television: | 500 |
| Pro Form treadmill: | 1,000 |
| Clothing: | 1,000 |
| Rug: | 600 |
| Bedding: | 300 |
| Window treatments: | 250 |
| Lamp: | 125 |
| Ceiling fan: | 250 |

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Additionally, the automobile damaged by the smaller tree was a collector's item Mercedes AMG 63 Limited Edition 507, which incurred depreciation of value of approximately $10,000, even after repair.

57. To date, State Farm has not paid Dr. Aaron for the same, in breach of the Policy.

**COUNT I – BREACH OF CONTRACT**

58. Plaintiff repeats and incorporates by reference all proceeding paragraphs as if fully set forth herein at length.

59. Dr. Aaron has faithfully paid his policy premiums for his homeowners' policies issued by State Farm, including The Policy and is in compliance with all policy terms and conditions with respect to his claim.

60. Pursuant to the Policy, State Farm agreed to "pay the cost to repair or replace with similar construction and for the same use on the premises shown in the Declarations" See Exhibit "A" at p. 11. The Declarations affords coverage from the dwelling in the amount of $651,800, plus a dwelling extension up to $65,180 and personal property in the amount of $488,850. See Declarations included in Exhibit "A."

61. Occurrence is defined as "...an accident, including exposure to conditions, which results in bodily injury or property damage during the policy period." Exhibit "A" at p.2, ¶7.

62. "Property damage" is defined as "physical injury to or destruction of tangible property, including loss of use of this property." Exhibit "A" at p.2, ¶8.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

63. State Farm owes a duty to Dr. Aaron to fully investigate the damages caused by the storm of July 23, 2016 and fallen trees and to properly, fully and safely repair and reconstruct the Home.

64. By failing to pay for necessary structural repairs to the Home, pool repairs and personal property damage incurred as a result of the fallen tree, and all consequential damages flowing therefrom, State Farm is in breach of its contractual obligations under the Policy.

65. As a direct and proximate result of State Farm's breach of its obligation to repair and/or replace Dr. Aaron's Home, pool and personal property, he has been deprived of the benefits of the coverage for which State Farm has been paid and has suffered substantial damage.

66. Specifically, Dr. Aaron's direct casualty loss damages consist of at least $157,428.73 (additional costs to repair and reconstruct the Home), $6,629.29 in pool repairs and $16,425.00 in personal property damage.

67. Also pursuant to the Policy, State Farm agreed to pay ALE coverage for the shorter period of either the time required to repair the premises or 24 months.

68. By failing to continue ALE coverage for a period of 24 months, having terminated the same as of April 12, 2017, State Farm is further in breach of its contractual obligations under the Policy.

69. As a direct and proximate result of State Farm's breach of its obligation to provide ALE coverage, Dr. Aaron has been deprived of the benefits of the coverage for which State Farm has been paid and has suffered substantial damage.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

70. Dr. Aaron has and continues to incur damages since April 13, 2017 for additional living expenses, in the amount of $3,200/month plus utilities.

71. By virtue of State Farm's breaches of its obligations via the Policy to repair Dr. Aaron's Home and pool, pay for his personal property damage and provide ALE coverage, Dr. Aaron has lost significant time from his work as a physician, and suffered a loss of earnings over and above what would be reasonable and expected by a policyholder submitting a casualty claim, by reason of State Farm's breach of contract.

72. Dr. Aaron's estimated lost earnings are approximately $120,000.00 to date.

73. Also by virtue of State Farm's breaches of its obligations via the Policy to repair Dr. Aaron's Home and pool, pay for personal property damage and provide ALE coverage, Dr. Aaron has incurred and will continue to incur legal and other expenses, including attorneys' fees and court costs, as well as future earnings loss.

74. State Farm's refusals to repair Dr. Aaron's Home and pool, pay for personal property damage and provide continued ALE coverage were done willfully and with the knowledge that its actions were in breach of the Policy and, further, that its actions would cause Dr. Aaron harm, thereby justifying the award of punitive damages.

**WHEREFORE,** Plaintiff Todd Aaron, M.D. respectfully demands judgment in his favor and against Defendant State Farm Fire and Casualty Company for compensatory damages in an amount in excess of $50,000, plus punitive damages, interest on all items of compensatory damage from the date the claim was made at the prime rate plus 3%, costs of suit and such other relief as this Court deems just and proper.

**COUNT II – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING AND BREACH OF FIDUCIARY DUTY**

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

75. Plaintiff repeats and incorporates by reference all proceeding paragraphs as if fully set forth herein at length.

76. In every contract there exists an implied covenant of good faith and fair dealing.

77. Under Pennsylvania law, the relationship between an insurer and its insured is of a fiduciary nature.

78. State Farm breached its implied covenant of good faith and fair dealing and its fiduciary duty by reason, inter alia, of the following conduct:

(a) Knowingly, willfully, outrageously and recklessly placing its own self-interest ahead of Plaintiff's interest by failing to objectively review and evaluate the facts of Plaintiff's claim;

(b) Knowingly, willfully, outrageously and recklessly failing to render a sincere and substantial performance of its obligations under the Policy issued to and paid for by Plaintiff;

(c) Knowingly, wantonly, outrageously and recklessly failing to give the interest of Plaintiff the same consideration it gave to its own interest by refusing to undertake a timely investigation of the claim;

(d) Arbitrarily, recklessly and frivolously refusing to agree to indemnify Plaintiff for property damage, personal property loss, additional living expenses and consequential damages due to acts that are squarely within the Policy's coverage;

(e) Knowingly, willfully, outrageously and recklessly failing and refusing to perform a meaningful, timely and objective investigation of Plaintiff's claimed damages;

(f) Knowingly, willfully and outrageously interpreting the provisions of its Policy in clear contravention of Pennsylvania law in an attempt to avoid coverage;

(g) Knowingly, willfully, recklessly, outrageously and in bad faith failing to conduct an investigation of the facts after receiving an independent analysis of the structural damage to the Home;

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

(h) Knowingly, willfully, outrageously, recklessly and in bad faith failing to effectuate prompt, fair and equitable adjustment of Plaintiff's claim, despite the fact that Plaintiff's entitlement to coverage under the Policy is clear; and

(i) Knowingly, willfully, recklessly, outrageously and in bad faith failing to promptly provide a reasonable explanation of the basis in the insurance Policy in relation to the facts or applicable law for denial of Plaintiff's claim for structural damage repair, pool repair, personal property loss and payment of ALE.

79. By virtue of State Farm's actions as set forth above, Dr. Aaron has incurred and will continue to incur damages, including earnings loss, attorney and expert witness fees, and other expenses.

80. State Farm's refusals to repair Dr. Aaron's Home and pool, pay for personal property damage and provide continued ALE coverage were done willfully and with the knowledge that its actions were in breach of the Policy and, further, that its actions would cause Dr. Aaron harm, thereby affording the award of punitive damages.

**WHEREFORE**, Plaintiff Todd Aaron, M.D. respectfully demands judgment in his favor and against Defendant State Farm Fire and Casualty Company for compensatory damages in an amount in excess of $50,000, plus punitive damages, interest on all items of compensatory damage from the date the claim was made at the prime rate plus 3%, costs of suit, attorney fees, expert witness fees, court costs, and such other relief as this Court deems just and proper.

**COUNT III BAD FAITH**

81. Plaintiff repeats and incorporates by reference all proceeding paragraphs as if fully set forth herein at length.

82. State Farm has failed to discharge its obligation to Dr. Aaron to honestly, fairly and promptly adjust his claim for damages arising out of the fallen tree and has

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

otherwise acted in bad faith towards Plaintiff, as defined by statute at 42 Pa.C.S.A. § 8371, by reason, inter alia, of the following:

(a) Denying coverage for Plaintiff's claim where no fairly debatable reason exists for denying coverage for full repair costs and personal property loss or otherwise delaying the processing of the claim;

(b) Terminating ALE coverage where no fairly debatable reason exists for doing so;

(c) Knowingly or recklessly disregarding the fact that no valid reason supports its view for denying coverage for full repair costs and personal property loss and terminating ALE coverage or for delaying the processing of Plaintiff's claim;

(d) Its failure/refusal to communicate with Plaintiff following his correspondence regarding the structural issues identified by one or more contractors;

(e) Its failure/refusal to return Aaron's home to substantially the same condition as prior to the storm damage;

(f) By conducting an improper and inadequate claims investigation;

(g) By failing to investigate the claim within a reasonable time period;

(h) By failing to communicate to Plaintiffs in a timely fashion the results of its investigation;

(i) By failing to provide Plaintiff with timely notice of a possible disclaimer of Plaintiff's coverage;

(j) By failing to confirm its coverage position, and specifically, interpretation of its Policy;

(k) Engaging in irrelevant and non-responsive communications with Plaintiff and Plaintiff's counsel;

(l) By failing to treat its policyholders' interests at least equal to its own, thereby elevating its own interests to the detriment of Plaintiffs; and

(m) By generating non-responsive, boiler plate letters parroting standard policy provision.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

WHEREFORE, Plaintiff Todd Aaron, M.D. respectfully demands judgment in his favor and against Defendant State Farm Fire and Casualty Company for compensatory damages in an amount in excess of $50,000, plus punitive damages, interest on all items of compensatory damage from the date the claim was made at the prime rate plus 3%, attorney fees, expert witness fees, costs of suit and such other relief as this Court deems just and proper.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

By: J. KURT STRAUB, ESQ.
TRICIA A. SWANN, ESQ.

Attorneys for Plaintiff
Todd Aaron, MD

DATED: May 23, 2017

5153126

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

# EXHIBIT A

StateFarm®

This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars. However, we want to point out that every policy contains limitations and exclusions. Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

# State Farm® Homeowners Policy

FP-7955

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

# TABLE OF CONTENTS

## DECLARATIONS

Your Name
Location of Your Residence
Policy Period
Coverages
Limits of Liability
Deductibles

| | Begins on Page |
|---|---|
| DECLARATIONS CONTINUED | 1 |
| DEFINITIONS | 1 |
| SECTION I - YOUR PROPERTY | |
| COVERAGES | 3 |
| Coverage A - Dwelling | 3 |
| Coverage B - Personal Property | 3 |
| Coverage C - Loss of Use | 4 |
| Additional Coverages | 5 |
| Inflation Coverage | 7 |
| LOSSES INSURED | 7 |
| LOSSES NOT INSURED | 9 |
| LOSS SETTLEMENT | 11 |
| CONDITIONS | 13 |
| SECTION II - YOUR LIABILITY | |
| COVERAGES | 15 |
| Coverage L - Personal Liability | 15 |
| Coverage M - Medical Payments to Others | 15 |
| Additional Coverages | 15 |
| EXCLUSIONS | 16 |
| CONDITIONS | 18 |
| SECTION I AND SECTION II - CONDITIONS | 19 |
| OPTIONAL POLICY PROVISIONS | 20 |

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983, 1992.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

## HOMEOWNERS POLICY

### DECLARATIONS CONTINUED

We agree to provide the insurance described in this policy:

1. based on your payment of premium for the coverages you chose;
2. based on your compliance with all applicable provisions of this policy; and
3. in reliance on your statements in these Declarations.

You agree, by acceptance of this policy, that:

1. you will pay premiums when due and comply with the provisions of the policy;
2. the statements in these Declarations are your statements and are true;
3. we insure you on the basis your statements are true; and
4. this policy contains all of the agreements between you and us and any of our agents.

Unless otherwise indicated in the application, you state that during the three years preceding the time of your application for this insurance your Loss History and Insurance History are as follows:

1. Loss History: you have not had any losses, insured or not; and
2. Insurance History: you have not had any insurer or agency cancel or refuse to issue or renew similar insurance to you or any household member.

### DEFINITIONS

"You" and "your" mean the "named insured" shown in the Declarations. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the Declarations.

Certain words and phrases are defined as follows:

1. "bodily injury" means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.

   Bodily injury does not include:

   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any insured to any other person;

   b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any insured to any other person; or

   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

2. "business" means a trade, profession or occupation. This includes farming.

3. "Declarations" means the policy Declarations, any amended Declarations, the most recent renewal notice or certificate, an Evidence of Insurance form or any endorsement changing any of these.

4. "insured" means you and, if residents of your household:

   a. your relatives; and

   b. any other person under the age of 21 who is in the care of a person described above.

   Under Section II, "insured" also means:

   c. with respect to animals or watercraft to which this policy applies, the person or organization legally responsible for them. However, the animal or watercraft must be owned by you or a person included in 4.a. or 4.b. A person or organization using or having custody of these animals or watercraft in the course of a business, or without permission of the owner, is not an insured; and



Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

d. with respect to any vehicle to which this policy applies, any person while engaged in your employment or the employment of a person included in 4.a. or 4.b.

5. "insured location" means:

a. the residence premises;

b. the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire while this policy is in effect for your use as a residence;

c. any premises used by you in connection with the premises included in 5.a. or 5.b.;

d. any part of a premises not owned by an insured but where an insured is temporarily residing;

e. land owned by or rented to an insured on which a one or two family dwelling is being constructed as a residence for an insured;

f. individual or family cemetery plots or burial vaults owned by an insured;

g. any part of a premises occasionally rented to an insured for other than business purposes;

h. vacant land owned by or rented to an insured. This does not include farm land; and

i. farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

6. "motor vehicle", when used in Section II of this policy, means:

a. a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an insured location is not a motor vehicle;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by or carried on a vehicle included in 6.a. is not a motor vehicle;

c. a motorized golf cart, snowmobile, motorized bicycle, motorized tricycle, all-terrain vehicle or any other similar type equipment owned by an insured and designed or used for recreational or utility purposes off public roads, while off an insured location. A motorized golf cart while used for golfing purposes is not a motor vehicle; and

d. any vehicle while being towed by or carried on a vehicle included in 6.a., 6.b. or 6.c.

7. "occurrence", when used in Section II of this policy, means an accident, including exposure to conditions which results in:

a. bodily injury; or

b. property damage;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence.

8. "property damage" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any insured is not property damage.

9. "residence employee" means an employee of an insured who performs duties, including household or domestic services, in connection with the maintenance or use of the residence premises. This includes employees who perform similar duties elsewhere for you. This does not include employees while performing duties in connection with the business of an insured.

10. "residence premises" means:

a. the one, two, three or four-family dwelling, other structures and grounds; or

b. that part of any other building;

where you reside and which is shown in the Declarations.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

## SECTION I - COVERAGES

### COVERAGE A - DWELLING

1. **Dwelling.** We cover the dwelling used principally as a private residence on the residence premises shown in the Declarations.

   Dwelling includes:

   a. structures attached to the dwelling;

   b. materials and supplies located on or adjacent to the residence premises for use in the construction, alteration or repair of the dwelling or other structures on the residence premises;

   c. foundation, floor slab and footings supporting the dwelling; and

   d. wall-to-wall carpeting attached to the dwelling.

2. **Dwelling Extension.** We cover other structures on the residence premises, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

   We do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used in whole or in part for business purposes; or

   c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

3. **Property Not Covered.** We do not cover:

   a. land, including the land necessary to support any Coverage A property;

   b. any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

   c. the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A.

### COVERAGE B - PERSONAL PROPERTY

1. **Property Covered.** We cover personal property owned or used by an insured while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At your request, we will cover personal property owned by others while the property is on the part of the residence premises occupied exclusively by an insured. At your request, we will also cover personal property owned by a guest or a residence employee, while the property is in any other residence occupied by an insured.

   We cover personal property usually situated at an insured's residence, other than the residence premises, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after you start moving the property there. If the residence premises is a newly acquired principal residence, personal property in your immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy.

   **Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

   a. $200 on money, coins and medals, including any of these that are a part of a collection, and bank notes;

   b. $1,000 on property used or intended for use in a business, including merchandise held as samples or for sale or for delivery after sale, while on the residence premises. This coverage is limited to $250 on such property away from the residence premises.

      Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage;

   c. $1,000 on securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

   d. $1,000 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

   e. $1,000 on trailers not used with watercraft;

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

f. $2,500 on stamps, trading cards and comic books, including any of these that are a part of a collection;

g. $2,500 for loss by theft of firearms;

h. $2,500 for loss by theft of silverware and goldware;

i. $5,000 on electronic data processing system equipment and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the residence premises except when said equipment or media are removed from the residence premises for the purpose of repair, servicing or temporary use. An insured student's equipment and media are covered while at a residence away from home; and

j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

2. **Property Not Covered.** We do not cover:

a. articles separately described and specifically insured in this or any other insurance;

b. animals, birds or fish;

c. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those not licensed for use on public highways which are:

(1) used solely to service the insured location; or

(2) designed for assisting the handicapped;

d. devices or instruments for the recording or reproduction of sound permanently attached to an engine or motor propelled vehicle. We do not cover tapes, wires, records or other mediums that may be used with these devices or instruments while in the vehicle;

e. aircraft and parts;

f. property of roomers, boarders, tenants and other residents not related to an Insured. We do cover property of roomers, boarders and other residents related to an insured;

g. property regularly rented or held for rental to others by an insured. This exclusion does not apply to property of an insured in a sleeping room rented to others by an insured;

h. property rented or held for rental to others away from the residence premises;

i. any citizens band radios, radio telephones, radio transceivers, radio transmitters, radar or laser detectors, antennas and other similar equipment permanently attached to an engine or motor propelled vehicle;

j. books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to any recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records; or

k. recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market.

**COVERAGE C - LOSS OF USE**

1. **Additional Living Expense.** When a Loss Insured causes the residence premises to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

2. **Fair Rental Value.** When a Loss Insured causes that part of the residence premises rented to others or held for rental by you to become uninhabitable, we will cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the residence premises rented or held for rental is uninhabitable.

3. **Prohibited Use.** When a civil authority prohibits your use of the residence premises because of direct damage to a neighboring premises by a Loss Insured, we will cover any resulting Additional Living Expense and Fair Rental

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Value. Coverage is for a period not exceeding two weeks while use is prohibited.

We do not cover loss or expense due to cancellation of a lease or agreement.

SECTION I - ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions and conditions of this policy.

1. **Debris Removal.** We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property.

   When the amount payable for the property damage plus the debris removal exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to Additional Coverage, item 3. Trees, Shrubs and Other Plants.

   We will also pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the residence premises when the tree has caused a Loss Insured to Coverage A property.

2. **Temporary Repairs.** If damage is caused by a Loss Insured, we will pay the reasonable and necessary cost you incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover outdoor trees, shrubs, plants or lawns, on the residence premises, for direct loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles (not owned or operated by a resident of the residence premises), Vandalism or malicious mischief or Theft.

   The limit for this coverage, including the removal of debris, shall not exceed 5% of the amount shown in the Declarations for COVERAGE A - DWELLING. We will not pay more than $500 for any one outdoor tree, shrub or plant, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for business purposes.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges. This means charges incurred when the fire department is called to save or protect covered property from a Loss Insured. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed.** Covered property, while being removed from a premises endangered by a Loss Insured, is covered for any accidental direct physical loss. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money.**

   a. We will pay up to $1,000 for:

      (1) the legal obligation of an insured to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an insured's name. If an insured has not complied with all terms and conditions under which the cards are issued, we do not cover use by an insured or anyone else;

      (2) loss to an insured caused by forgery or alteration of any check or negotiable instrument; and

      (3) loss to an insured through acceptance in good faith of counterfeit United States or Canadian paper currency.

      No deductible applies to this coverage.

      We will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

   b. We do not cover loss arising out of business pursuits or dishonesty of an insured.

   c. Defense:

      (1) We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend claims or suits ends when

the amount we pay for the loss equals our limit of liability.

(2) If claim is made or a suit is brought against an **Insured** for liability under the Credit Card or Bank Fund Transfer Card coverage, we will provide a defense. This defense is at our expense by counsel of our choice.

(3) We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption.** We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a Loss Insured occurring on the **residence premises**. The power lines off the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

   a. removal of a plug from an electrical outlet; or

   b. turning off an electrical switch unless caused by a Loss Insured.

   This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward.** We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

10. **Volcanic Action.** We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

   a. volcanic blast or airborne shock waves;

   b. ash, dust or particulate matter; or

   c. lava flow.

   We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

   One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

   This coverage does not increase the limit applying to the damaged property.

11. **Collapse.** We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

   Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

   The collapse must be directly and immediately caused only by one or more of the following:

   a. perils described in **SECTION I - LOSSES INSURED, COVERAGE B - PERSONAL PROPERTY.** These perils apply to covered building and personal property for loss insured by this Additional Coverage;

   b. hidden decay of a supporting or weight-bearing structural member of the building;

   c. hidden insect or vermin damage to a structural member of the building;

   d. weight of contents, equipment, animals or people;

   e. weight of ice, snow, sleet or rain which collects on a roof; or

   f. use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

   Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the

loss is the direct and immediate cause of the collapse of the building.

This coverage does not increase the limit applying to the damaged property.

12. Locks. We will pay the reasonable expenses you incur to re-key locks on exterior doors of the dwelling located on the residence premises, when the keys to those locks are a part of a covered theft loss.

No deductible applies to this coverage.

INFLATION COVERAGE

The limits of liability shown in the Declarations for Coverage A, Coverage B and, when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the Declarations.

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then
2. multiply the resulting factor by the limits of liability for Coverage A, Coverage B and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the Declarations.

If during the term of this policy the Coverage A limit of liability is changed at your request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

## SECTION I - LOSSES INSURED

COVERAGE A - DWELLING

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in SECTION I - LOSSES NOT INSURED.

COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in SECTION I - LOSSES NOT INSURED:

1. Fire or lightning.
2. Windstorm or hail. This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.
3. Explosion.
4. Riot or civil commotion.
5. Aircraft, including self-propelled missiles and spacecraft.
6. Vehicles, meaning impact by a vehicle.
7. Smoke, meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.
8. Vandalism or malicious mischief, meaning only willful and malicious damage to or destruction of property.
9. Theft, including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

   This peril does not include:

   a. loss of a precious or semi-precious stone from its setting;
   b. loss caused by theft:
      (1) committed by an insured or by any other person regularly residing on the insured location. Property of a student who is an insured is covered while located at a residence away from home, if the theft is committed by a person who is not an insured;
      (2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

(3) from the part of a residence premises rented to others:

(a) caused by a tenant, members of the tenant's household, or the tenant's employees;

(b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins and medals;

(c) of securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps; or

(d) of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones;

c. loss caused by theft that occurs away from the residence premises of:

(1) property while at any other residence owned, rented to, or occupied by an insured, except while an insured is temporarily residing there. Property of a student who is an insured is covered while at a residence away from home;

(2) watercraft of all types, including their furnishings, equipment and outboard motors; or

(3) trailers and campers designed to be pulled by or carried on a vehicle.

If the residence premises is a newly acquired principal residence, property in the immediate past principal residence shall not be considered property away from the residence premises for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Sudden and accidental discharge or overflow of water** or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water or steam escaped;

b. caused by or resulting from freezing;

c. caused by or resulting from water or sewage from outside the residence premises plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include loss on the residence premises while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

a. maintain heat in the building; or

b. shut off the water supply and drain the system and appliances of water.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

15. Sudden and accidental damage to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,000 under this peril for each damaged item described above.

16. Breakage of glass, meaning damage to personal property caused by breakage of glass which is a part of a building on the residence premises. There is no coverage for loss or damage to the glass.

## SECTION I - LOSSES NOT INSURED

1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. collapse, except as specifically provided in SECTION I - ADDITIONAL COVERAGES, Collapse;

b. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion only applies while the dwelling is vacant, unoccupied or being constructed. This exclusion does not apply if you have used reasonable care to:

(1) maintain heat in the building; or

(2) shut off the water supply and drain the system and appliances of water;

c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, pavement, patio, foundation, retaining wall, bulkhead, pier, wharf or dock;

d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

e. vandalism or malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

f. continuous or repeated seepage or leakage of water or steam from a:

(1) heating, air conditioning or automatic fire protective sprinkler system;

(2) household appliance; or

(3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

which occurs over a period of time. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

h. corrosion, electrolysis or rust;

i. mold, fungus or wet or dry rot;

j. contamination;

k. smog, smoke from agricultural smudging or industrial operations;

l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

m. birds, vermin, rodents, insects, or domestic animals. We do cover the breakage of glass or safety glazing material which is a part of a building, when caused by birds, vermin, rodents, insects or domestic animals; or

n. pressure from or presence of tree, shrub or plant roots.

However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. Ordinance or Law, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure.

b. Earth Movement, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Volcanic Action.**

However, we do insure for any direct loss by fire resulting from earth movement, provided the resulting fire loss is itself a Loss Insured.

c. Water Damage, meaning:

(1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

(2) water or sewage from outside the residence premises plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, provided the resulting loss is itself a Loss Insured.

d. Neglect, meaning neglect of the insured to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. War, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

f. Nuclear Hazard, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused or any consequence of any of these. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion or smoke.

However, we do insure for any direct loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a Loss Insured.

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

b. defect, weakness, inadequacy, fault or unsoundness in:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the residence premises; or

c. weather conditions.

However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

## SECTION I - LOSS SETTLEMENT

Only the Loss Settlement provisions shown in the Declarations apply. We will settle covered property losses according to the following.

**COVERAGE A - DWELLING**

**1. A1 - Replacement Cost Loss Settlement - Similar Construction.**

a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the Declarations, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

(1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less;

(3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

(4) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under Option OL - Building Ordinance or Law Coverage.

b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the Declarations for COVERAGE A - DWELLING EXTENSION.

**2. A2 - Replacement Cost Loss Settlement - Common Construction.**

a. We will pay the cost to repair or replace with common construction and for the same use on the premises shown in the Declarations, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

(1) we will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. We will not pay the cost to repair or replace obsolete, antique or custom construction with like kind and quality;

(2) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

replace the damaged part of the property as described in a.(1) above;

(3) when the repair or replacement is actually completed as described in a.(1) above, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less;

(4) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

(5) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under Option OL - Building Ordinance or Law Coverage.

b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the Declarations for COVERAGE A - DWELLING EXTENSION.

**COVERAGE B - PERSONAL PROPERTY**

**1. B1 - Limited Replacement Cost Loss Settlement.**

a. We will pay the cost to repair or replace property covered under **SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY**, except for property listed in item b. below, subject to the following:

(1) until repair or replacement is completed, we will pay only the cost to repair or replace less depreciation;

(2) after repair or replacement is completed, we will pay the difference between the cost to repair or replace less depreciation and the cost you have actually and necessarily spent to repair or replace the property; and

(3) if property is not repaired or replaced within two years after the date of loss, we will pay only the cost to repair or replace less depreciation.

b. We will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

(3) property not useful for its intended purpose.

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) our cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in the policy; or

(4) any applicable Coverage B limit of liability.

**2. B2 - Depreciated Loss Settlement.**

a. We will pay the cost to repair or replace less depreciation at the time of loss for property covered under **SECTION I - COVERAGES COVERAGE B - PERSONAL PROPERTY**, except for property listed in item b. below.

b. We will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

(3) property not useful for its intended purpose.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) our cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in the policy; or

(4) any applicable Coverage B limit of liability.

## SECTION I - CONDITIONS

**1. Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

a. to the insured for an amount greater than the insured's interest; or

b. for more than the applicable limit of liability.

**2. Your Duties After Loss.** After a loss to which this insurance may apply, you shall see that the following duties are performed:

a. give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

d. as often as we reasonably require:

(1) exhibit the damaged property;

(2) provide us with records and documents we request and permit us to make copies;

(3) submit to and subscribe, while not in the presence of any other insured:

(a) statements; and

(b) examinations under oath; and

(4) produce employees, members of the insured's household or others for examination under oath to the extent it is within the insured's power to do so; and

e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) the time and cause of loss;

(2) interest of the insured and all others in the property involved and all encumbrances on the property;

(3) other insurance which may cover the loss;

(4) changes in title or occupancy of the property during the term of this policy;

(5) specifications of any damaged building and detailed estimates for repair of the damage;

(6) an inventory of damaged or stolen personal property described in 2.c.;

(7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

(8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

**3. Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

a. repair or replace any part to restore the pair or set to its value before the loss; or

b. pay the difference between the depreciated value of the property before and after the loss.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

4. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

5. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only our share of the loss. Our share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

7. **Our Option.** We may repair or replace any part of the property damaged or stolen with similar property. Any property we pay for or replace becomes our property.

8. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

   a. reach agreement with you;

   b. there is an entry of a final judgment; or

   c. there is a filing of an appraisal award with us.

9. **Abandonment of Property.** We need not accept any property abandoned by an insured.

10. **Mortgage Clause.** The word "mortgagee" includes trustee.

    a. If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

    b. If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

       (1) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

       (2) pays on demand any premium due under this policy, if you have not paid the premium; and

       (3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    c. If this policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect. Proof of mailing shall be proof of notice.

    d. If we pay the mortgagee for any loss and deny payment to you:

       (1) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

       (2) at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

    e. Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** We will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing or transporting prope y for

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

a fee. This applies regardless of any other provision of this policy.

12. **Intentional Acts:** If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other insured for this loss.

## SECTION II - LIABILITY COVERAGES

### COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and
2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals our limit of liability.

### COVERAGE M - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing bodily injury. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the insured location with the permission of an insured;
2. to a person off the insured location, if the bodily injury:
   a. arises out of a condition on the insured location or the ways immediately adjoining;
   b. is caused by the activities of an insured;
   c. is caused by a residence employee in the course of the residence employee's employment by an insured; or
   d. is caused by an animal owned by or in the care of an insured; or
3. to a residence employee if the occurrence causing bodily injury occurs off the insured location and arises out of or in the course of the residence employee's employment by an insured.

### SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:
   a. expenses we incur and costs taxed against an insured in suits we defend;
   b. premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage L limit. We are not obligated to apply for or furnish any bond;
   c. reasonable expenses an insured incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for aiding us in the investigation or defense of claims or suits;
   d. prejudgment interest awarded against the insured on that part of the judgment we pay; and
   e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.
2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an insured for bodily injury covered under this policy. We will not pay for first aid to you or any other insured.
3. **Damage to Property of Others.**
   a. We will pay for property damage to property of others caused by an insured.
   b. We will not pay more than the smallest of the following amounts:
      (1) replacement cost at the time of loss;
      (2) full cost of repair; or

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

(3) $500 in any one **occurrence**.

c. We will not pay for **property damage**:

(1) if insurance is otherwise provided in this policy;

(2) caused intentionally by an **insured** who is 13 years of age or older;

(3) to property, other than a rented golf cart, owned by or rented to an **insured**, a tenant of an **insured**, or a resident in your household; or

(4) arising out of:

(a) **business** pursuits;

(b) any act or omission in connection with a premises an **insured** owns, rents or controls, other than the **insured location**; or

(c) the ownership, maintenance, or use of a **motor vehicle**, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board or similar type watercraft.

## SECTION II - EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

a. **bodily injury** or **property damage**:

(1) which is either expected or intended by the **insured**; or

(2) which is the result of willful and malicious acts of the **insured**;

b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured**. This exclusion does not apply:

(1) to activities which are ordinarily incident to non-**business** pursuits;

(2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

(3) to the rental or holding for rental of a **residence** of yours:

(a) on an occasional basis for the exclusive use as a **residence**;

(b) in part, unless intended for use as a residence by more than two roomers or boarders; or

(c) in part, as an office, school, studio or private garage;

(4) when the dwelling on the **residence premises** is a two, three or four-family dwelling and you occupy one part and rent or hold for rental the other part; or

(5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations;

c. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

d. **bodily injury** or **property damage** arising out of any premises currently owned or rented to any **insured** which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**;

e. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

(1) an aircraft;

(2) a **motor vehicle** owned or operated by or rented or loaned to any **insured**; or

(3) a watercraft:

(a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any insured;

(d) designated as an airboat, air cushion, or similar type of craft; or

(e) owned by any insured which is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to bodily injury to a residence employee arising out of and in the course of the residence employee's employment by an insured. Exclusion e.(3) does not apply while the watercraft is on the residence premises;

f. bodily injury or property damage arising out of:

(1) the entrustment by any insured to any person;

(2) the supervision by any insured of any person;

(3) any liability statutorily imposed on any insured; or

(4) any liability assumed through an unwritten or written agreement by any insured;

with regard to the ownership, maintenance or use of any aircraft, watercraft, or motor vehicle which is not covered under Section II of this policy;

g. bodily injury or property damage caused directly or indirectly by war, including undeclared war, or any warlike act including destruction or seizure or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

h. bodily injury to you or any insured within the meaning of part a. or b. of the definition of insured.

This exclusion also applies to any claim made or suit brought against you or any insured to share damages with or repay someone else who may be obligated to pay damages because of the bodily injury sustained by you or any insured within the meaning of part a. or b. of the definition of insured;

i. any claim made or suit brought against any insured by:

(1) any person who is in the care of any insured because of child care services provided by or at the direction of:

(a) any insured;

(b) any employee of any insured; or

(c) any other person actually or apparently acting on behalf of any insured; or

(2) any person who makes a claim because of bodily injury to any person who is in the care of any insured because of child care services provided by or at the direction of:

(a) any insured;

(b) any employee of any insured; or

(c) any other person actually or apparently acting on behalf of any insured.

This exclusion does not apply to the occasional child care services provided by any insured, or to the part-time child care services provided by any insured who is under 19 years of age; or

j. bodily injury or property damage arising out of an insured's participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

2. Coverage L does not apply to:

a. liability:

(1) for your share of any loss assessment charged against all members of an association of property owners; or

(2) assumed under any unwritten contract or agreement, or by contract or agreement in connection with a business of the insured;

b. property damage to property currently owned by any insured;

c. property damage to property rented to, occupied or used by or in the care of any insured. This exclusion

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

does not apply to property damage caused by fire, smoke or explosion;

d. bodily injury to a person eligible to receive any benefits required to be provided or voluntarily provided by an insured under a workers' compensation, non-occupational disability, or occupational disease law;

e. bodily injury or property damage for which an insured under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

3. Coverage M does not apply to bodily injury:

a. to a residence employee if it occurs off the insured location and does not arise out of or in the course of the residence employee's employment by an insured;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law;

c. from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

d. to a person other than a residence employee of an insured, regularly residing on any part of the insured location.

## SECTION II - CONDITIONS

1. Limit of Liability. The Coverage L limit is shown in the Declarations. This is our limit for all damages from each occurrence, regardless of the number of insureds, claims made or persons injured.

The Coverage M limit is shown in the Declarations. This is our limit for all medical expense for bodily injury to one person as the result of one accident.

2. Severability of Insurance. This insurance applies separately to each insured. This condition shall not increase our limit of liability for any one occurrence.

3. Duties After Loss. In case of an accident or occurrence, the insured shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

a. give written notice to us or our agent as soon as practicable, which sets forth:

(1) the identity of this policy and insured;

(2) reasonably available information on the time, place and circumstances of the accident or occurrence; and

(3) names and addresses of any claimants and available witnesses;

b. immediately forward to us every notice, demand, summons or other process relating to the accident or occurrence;

c. at our request, assist in:

(1) making settlement;

(2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an insured;

(3) the conduct of suits and attend hearings and trials; and

(4) securing and giving evidence and obtaining the attendance of witnesses;

d. under the coverage - Damage to Property of Others, exhibit the damaged property if within the insured's control; and

e. the insured shall not, except at the insured's own cost, voluntarily make payments, assume obligations or incur expenses. This does not apply to expense for first aid to others at the time of the bodily injury.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

4. **Duties of an Injured Person - Coverage M.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

   a. give us written proof of claim, under oath if required, as soon as practicable;

   b. execute authorization to allow us to obtain copies of medical reports and records; and

   c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim - Coverage M.** Payment under this coverage is not an admission of liability by an insured or us.

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

   No one shall have the right to join us as a party to an action against an insured. Further, no action with respect to Coverage L shall be brought against us until the obligation of the insured has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an insured shall not relieve us of our obligation under this policy.

8. **Other Insurance - Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II - CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or bodily injury or property damage under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice:

      (1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies, whether the premium is payable to us or our agent or under any finance or credit plan.

      (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason. We may cancel by notifying you at least 10 days before the date cancellation takes effect.

      (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

         (a) if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy; or

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

(b) if the risk has changed substantially since the policy was issued.

We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary. We may cancel by notifying you at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

d. The return premium may not be refunded with the notice of cancellation or when the policy is returned to us. In such cases, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the Declarations. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

7. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation.** An Insured may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an insured shall:

a. sign and deliver all related papers;

b. cooperate with us in a reasonable manner; and

c. do nothing after a loss to prejudice such rights.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person shown in the Declarations or the spouse, if a resident of the same household, dies:

a. we insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

b. insured includes:

(1) any member of your household who is an insured at the time of your death, but only while a resident of the residence premises; and

(2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the Declarations and is subject to all the terms, provisions, exclusions and conditions of this policy.

**Option AI - Additional Insured.** The definition of Insured is extended to include the person or organization shown in the Declarations as an Additional Insured or whose name is on file with us. Coverage is with respect to:

1. Section I - Coverage A; or

2. Section II - Coverages L and M but only with respect to the residence premises. This coverage does not apply to bodily injury to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the Declarations.

**Option BP - Business Property.** The COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability, item b., for property used or intended for use in a business,

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,000 limit is replaced with the amount shown in the Declarations for this option.

**Option BU - Business Pursuits. SECTION II - EXCLUSIONS**, Item 1.b. is modified as follows:

1. Section II coverage applies to the business pursuits of an insured who is a:
   a. clerical office employee, salesperson, collector, messenger; or
   b. teacher (except college, university and professional athletic coaches), school principal or school administrator;

   while acting within the scope of the above listed occupations.

2. However, no coverage is provided:
   a. for bodily injury or property damage arising out of a business owned or financially controlled by the insured or by a partnership of which the insured is a partner or member;
   b. for bodily injury or property damage arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:
      (1) computer programming, architectural, engineering or industrial design services;
      (2) medical, surgical, dental or other services or treatment conducive to the health of persons or animals; and
      (3) beauty or barber services or treatment;
   c. for bodily injury to a fellow employee of the insured injured in the course of employment; or
   d. when the insured is a member of the faculty or teaching staff of a school or college:
      (1) for bodily injury or property damage arising out of the maintenance, use, loading or unloading of:
         (a) draft or saddle animals including vehicles for use with them; or
         (b) aircraft, motor vehicles, recreational motor vehicles or watercraft, airboats, air cushions or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

         owned or operated, or hired by or for the insured or employer of the insured or used by the insured for the purpose of instruction in the use thereof; or
      (2) under Coverage M for bodily injury to a pupil arising out of corporal punishment administered by or at the direction of the insured.

**Option FA - Firearms.** Firearms are insured for accidental direct physical loss or damage.

The limits for this option are shown in the Declarations. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:
   a. mechanical breakdown, wear and tear, gradual deterioration;
   b. insects or vermin;
   c. any process of refinishing, renovating, or repairing;
   d. dampness of atmosphere or extremes of temperatures;
   e. inherent defect or faulty manufacture;
   f. rust, fouling or explosion of firearms;
   g. breakage, marring, scratching, tearing or denting unless caused by fire, thieves or accidents to conveyances; or
   h. infidelity of an insured's employees or persons to whom the insured property may be entrusted or rented;

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

2. our limit for loss by any Coverage B peril except theft is the limit shown in the Declarations for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the Declarations for this option. These limits apply in lieu of the Coverage B theft limit; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the Declarations.

**Option HC - Home Computer.** The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability**, item i., for electronic data processing system equipment and the recording or storage media used with that equipment is increased to be the amount shown in the Declarations for this option.

**Option ID - Increased Dwelling Limit.** We will settle losses to damaged building structures covered under **COVERAGE A - DWELLING** according to the **SECTION I - LOSS SETTLEMENT** provision shown in the Declarations.

If the amount you actually and necessarily spend to repair or replace damaged building structures exceeds the applicable limit of liability shown in the Declarations, we will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the Declarations to repair or replace the Dwelling; or
2. 10% of the Option ID limit of liability to repair or replace building structures covered under **COVERAGE A - DWELLING, Dwelling Extension.**

**Report Increased Values.** You must notify us within 90 days of the start of any new building structure costing $5,000 or more; or any additions to or remodeling of building structures which increase their values by $5,000 or more. You must pay any additional premium due for the increased value. We will not pay more than the applicable limit of liability shown in the Declarations, if you fail to notify us of the increased value within 90 days.

**Option IO - Incidental Business.** The coverage provided by this option applies only to that incidental business occupancy on file with us:

1. **COVERAGE A - DWELLING, Dwelling Extension**, item 2.b. is deleted.
2. **COVERAGE B - PERSONAL PROPERTY** is extended to include equipment, supplies and furnishings usual and incidental to this business occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

The Option IO limits are shown in the Declarations. The first limit applies to property on the residence premises. The second limit applies to property while off the residence premises. These limits are in addition to the **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability** on property used or intended for use in a business.

3. Under Section II, the residence premises is not considered business property because an insured occupies a part of it as an incidental business.
4. **SECTION II - EXCLUSIONS**, item 1.o. of Coverage L and Coverage M is replaced with the following:

b. bodily injury or property damage arising out of business pursuits of an insured or the rental or holding for rental of any part of any premises by an insured. This exclusion does not apply:

(1) to activities which are ordinarily incident to non-business pursuits or to business pursuits of an insured which are necessary or incidental to the use of the residence premises as an incidental business;

(2) with respect to Coverage L to the occasional or part-time business pursuits of an insured who is under 19 years of age;

(3) to the rental or holding for rental of a residence of yours:

(a) on an occasional basis for exclusive use as a residence;

(b) in part, unless intended for use as a residence by more than two roomers or boarders; or

(c) in part, as an incidental business or private garage;

(4) when the dwelling on the residence premises is a two family dwelling and you occupy

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

one part and rent or hold for rental the other part; or

(5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

5. This insurance does not apply to:

a. bodily injury to an employee of an insured arising out of the residence premises as an incidental business other than to a residence employee while engaged in the employee's employment by an insured;

b. bodily injury to a pupil arising out of corporal punishment administered by or at the direction of the insured;

c. liability arising out of any acts, errors or omissions of an insured, or any other person for whose acts an insured is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections or engineering services in the conduct of an insured's incidental business involving data processing, computer consulting or computer programming; or

d. any claim made or suit brought against any insured by:

(1) any person who is in the care of any insured because of child care services provided by or at the direction of:

(a) any insured;

(b) any employee of any insured; or

(c) any other person actually or apparently acting on behalf of any insured; or

(2) any person who makes a claim because of bodily injury to any person who is in the care of any insured because of child care services provided by or at the direction of:

(a) any insured;

(b) any employee of any insured; or

(c) any other person actually or apparently acting on behalf of any insured.

Coverage M does not apply to any person indicated in (1) and (2) above.

This exclusion does not apply to the occasional child care services provided by any insured, or to the part-time child care services provided by any insured who is under 19 years of age.

**Option JF - Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware and platinum are insured for accidental direct physical loss or damage.

The limits for this option are shown in the Declarations. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

a. mechanical breakdown, wear and tear, gradual deterioration;

b. insects or vermin;

c. inherent vice; or

d. seizure or destruction under quarantine or customs regulations;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the Declarations for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the Declarations for this option; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the Declarations for this option.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

**Option OL - Building Ordinance or Law.**

1. **Coverage Provided.**

   The total limit of insurance provided by this Building Ordinance or Law provision will not exceed an amount equal to the Option OL percentage shown in the Declarations of the Coverage A limit shown in the Declarations at the time of the loss, as adjusted by the inflation coverage provisions of the policy. This is an additional amount of insurance and applies only to the dwelling.

2. **Damaged Portions of Dwelling.**

   When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will pay for the increased cost to repair or rebuild the physically damaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

3. **Undamaged Portions of Damaged Dwelling.**

   When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will also pay for:

   a. the cost to demolish and clear the site of the undamaged portions of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs; and

   b. loss to the undamaged portion of the dwelling caused by enforcement of any ordinance or law if:

      (1) the enforcement is directly caused by the same Loss Insured;

      (2) the enforcement requires the demolition of portions of the same dwelling not damaged by the same Loss Insured;

      (3) the ordinance or law regulates the construction or repair of the dwelling, or establishes zoning or land use requirements at the described premises; and

      (4) the ordinance or law is in force at the time of the occurrence of the same Loss Insured; or

   c. the legally required changes to the undamaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

4. **Building Ordinance or Law Coverage Limitations.**

   a. We will not pay for any increased cost of construction under this coverage:

      (1) until the dwelling is actually repaired or replaced at the same or another premises in the same general vicinity; and

      (2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years.

   b. We will not pay more for loss to the undamaged portion of the dwelling caused by the enforcement of any ordinance or law than:

      (1) the depreciated value of the undamaged portion of the dwelling, if the dwelling is not repaired or replaced;

      (2) the amount you actually spend to replace the undamaged portion of the dwelling if the dwelling is repaired or replaced.

   c. We will not pay more under this coverage than the amount you actually spend:

      (1) for the increased cost to repair or rebuild the dwelling at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

      (2) to demolish and clear the site of the undamaged portions of the dwelling caused by enforcement of building, zoning or land use ordinance or law.

We will never pay for more than a dwelling of the same height, floor area and style on the same or similar premises as the dwelling, subject to the limit provided in paragraph 1. Coverage Provided of this option.

**Option SG - Silverware and Goldware Theft.** The COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability, item h., for theft of silverware and goldware is increased to be the amount shown in the Declarations for this option.

IN WITNESS WHEREOF, this Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

Lynne M. Yowell Secretary [signature] President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment are proper.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

State Farm Fire and Casualty Company
100 State Farm Place
Ballston Spa, NY 12020-5000

E-13- 6196-FBAE H W F

AARON, TODD
307 BARREN HILL RD
CONSHOHOCKEN PA 19428-2405

Location: Same as Mailing Address

SFPP No: 1113529913

Loss Settlement Provisions (See Policy)
A1 Replacement Cost - Similar Construction
B1 Limited Replacement Cost - Coverage B

Forms, Options, and Endorsements

| | |
|---|---|
| Homeowners Policy | FP-7955 |
| Increase Dwlg up to $128,800 | OPT ID |
| Ordinance/Law 10%/ $64,400 | OPT OL |
| Jewelry and Furs $1,500/$2,500 | OPT JF |
| Homeowners Policy Endorsement | FE-3518 |
| Amendatory Endorsement | * FE-2340 |

*Effective: NOV 15 2015

## RENEWAL CERTIFICATE

POLICY NUMBER 78-PZ-7637-4
Homeowners Policy
NOV 15 2015 to NOV 15 2016

BILLED THROUGH SFPP

Coverages and Limits

Section I

| | | |
|---|---|---|
| A Dwelling | | $644,000 |
| Dwelling Extension | Up To | 64,400 |
| B Personal Property | | 483,000 |
| C Loss of Use | | Actual Loss Sustained |

Deductibles - Section I

| | |
|---|---|
| All Losses 1/2% | 3,220 |

Section II

| | |
|---|---|
| L Personal Liability | $300,000 |
| Damage to Property of Others | 500 |
| M Medical Payments to Others (Each Person) | 5,000 |

| | |
|---|---|
| Annual Premium | $1,553.00 |

Premium Reductions

| | |
|---|---|
| Home/Auto Discount | 748.00 |
| Claim Record Discount | 534.00 |

Inflation Coverage Index: 245.0

NOTICE: Information concerning changes in your policy language is included. Please call your agent if you have any questions.

Please help us update the data used to determine your premium. Contact your agent with the year each of your home's utilities (heating/cooling, plumbing, or electrical) and roof were last updated.

*Thanks for letting us serve you. We appreciate our long term customers.*
Agent CHARLIE MONAHAN
Telephone (610) 275-7600

*Moving? See your State Farm agent. See reverse for important information.*
Prepared SEP 24 2015

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Mortgagee: WELLS FARGO BANK NA #936
Loan No: 0325748762
2nd Mtg: WELLS FARGO BANK NA
Loan No: 20062917700151

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

**Your coverage amount....**

It is up to you to choose the coverages and limits that meet your needs. We recommend that you purchase a coverage limit at least equal to the estimated replacement cost of your home. Replacement cost estimates are available from building contractors and replacement cost appraisers, or, your agent can provide an Xactware estimate using information you provide about your home. We can accept the type of estimate you choose as long as it provides a reasonable level of detail about your home. State Farm® does not guarantee that any estimate will be the actual future cost to rebuild your home. Higher limits are available at higher premiums. Lower limits are also available, which if selected may make certain coverages unavailable to you. We encourage you to periodically review your coverages and limits with your agent and to notify us of any changes or additions to your home.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

78-PZ-7637-4

FE-2340C
Page 1 of 2

# IMPORTANT NOTICE

Effective with this policy term, FE-2340 AMENDATORY ENDORSEMENT is added to your policy.
This notice summarizes the changes being made to your policy. Please read the new endorsement carefully and note the following changes:

**Potential Reduction In Coverage**

Although not intended to change coverage, this change could potentially reduce or eliminate coverage depending on how it is interpreted and, in that regard, should be viewed as either an actual or potential reduction in or elimination of coverage.

- SECTION I – LOSSES NOT INSURED, item 1.f: Language is removed to establish that there is no coverage under this section for paying the cost to tear out and replace any part of a building necessary to repair the system or appliance from which water or steam escaped. However, coverage may be available under the new Tear Out provision located in Section I – Additional Coverages.

**Other Changes**

- DECLARATIONS CONTINUED – Language is added to state we may adjust your premium during the policy period when you request changes, or the factors used in determining the premium change. If the premium increases, you must pay any additional premium.
- SECTION I AND SECTION II – CONDITIONS – Subrogation is now titled Subrogation and Reimbursement and the following changes are made:
  - Language is added under Subrogation to state that, as it relates to:
    - Section I – Your Property, if you have the right to recover damages from another, that right is automatically transferred to us up to the extent of our payment.
    - Section II – Your Liability, if you have the right to recover all or part of any payment we have made under this policy, those rights are automatically transferred to us.
  - Language is added under Reimbursement to state that, if we make payment under this policy and you receive payment from another person or organization, you must hold the proceeds in trust for us and reimburse us to the extent of our payment.

Endorsement FE-2340 follows this notice. Please read it carefully and keep it with your policy. If you have any questions about the information in this notice, please contact your State Farm® agent.

This notice is provided for informational purposes only, and it does not change, modify or invalidate any of the provisions, terms or conditions of your policy, or any other applicable endorsements.

## FE-2340 AMENDATORY ENDORSEMENT

DECLARATIONS CONTINUED

The following is added:

When you request changes to this policy, or the information or factors used to calculate the premium for this policy changes during the policy period, we may adjust the premium in accordance with the change during the policy period and you must pay any additional premium due within the time we specify.

SECTION I – ADDITIONAL COVERAGES

The following is added:

13. Tear Out. If a Loss Insured to Coverage A property is caused by water or steam escaping from a system or appliance, we will also pay the reasonable cost you incur to tear out and replace only that particular part of the building or condominium unit owned by you necessary to gain access to the specific point of that system or appliance from which the water or steam escaped. We will not cover the cost of repairing or replacing the system or appliance itself. This coverage does not increase the limit applying to Coverage A property.

SECTION I – LOSSES NOT INSURED

Item 1.f. is replaced by the following:

f. continuous or repeated seepage or leakage of water or steam from a:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012

CONTINUED

(1) heating, air conditioning or automatic fire protective sprinkler system;

(2) household appliance; or

(3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

which occurs over a period of time;

SECTION I AND SECTION II – CONDITIONS

Item 8. is replaced by the following:

8. **Subrogation and Reimbursement.**

a. **Subrogation.**

(1) Applicable to SECTION I – YOUR PROPERTY:

If any insured to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That insured must do everything necessary to secure our rights and must do nothing after loss to impair them. But an insured may waive in writing before a loss all rights of recovery against any person.

(2) Applicable to SECTION II – YOUR LIABILITY:

If any insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. An insured must do nothing after loss to impair them. At our request, an insured will bring suit or transfer those rights to us and help us enforce them.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

b. **Reimbursement.**

If we make payment under this policy and any insured to or for whom we make payment recovers or has recovered from another person or organization, then the insured to or for whom we make payment must:

(1) hold in trust for us the proceeds of any recovery; and

(2) reimburse us to the extent of our payment.

All other policy provisions apply.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

State Farm Fire and Casualty Company 78-PZ-7637-4

553-2474

## PREMIUM ADJUSTMENT

Insurance premiums have been adjusted and continue to reflect the expected cost of claims. Some policyholders will see their premiums increase while other policyholders may see their premiums decrease or stay the same. The amount your premium changed, if at all, depends on several factors including the expected claim experience in your area, the coverage you have, and any applicable discounts or charges.

The enclosed Renewal Certificate reflects your new premium.

State Farm® works hard to offer you the best combination of cost, protection, and service. We will continue doing our best to make the most effective use of your premium dollars and give you superior service when you need it.

If you have any questions about your premium, or policy coverages, please contact your State Farm agent.

553-2474 (10/07)

553-2918

## NOTICE TO POLICYHOLDER

For a comprehensive description of coverages and forms, please refer to your policy.

Policy changes that you requested before the "Date Prepared" on your Renewal Certificate are effective on the renewal date of this policy unless indicated otherwise by a separate endorsement, binder or Amended Declarations Page. Any coverage forms or endorsements included with your Renewal Certificate are effective on the renewal date of this policy.

Policy changes that you requested after the "Date Prepared" on your Renewal Certificate will be sent to you as an Amended Declarations Page or as an endorsement to your policy. You will be billed for any resulting premium increase later.

If you have acquired any valuable property items, made any improvements to your home, or have questions about your insurance coverage, please contact your State Farm® agent.

553-2918 (C) (10/08)

553-3142

## IMPORTANT NOTICE . . . Information Regarding Your Premium

Claims and information from other State Farm® policies in your household may have been used to determine the premium shown. A policy may be considered "in your household" if, according to our records, the policy has a name and address in common with this policy.

553-3142 (C) (10/09)

Agent: CHARLIE MONAHAN (CONTINUED) Telephone: (610) 275-7500

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

State Farm Fire and Casualty Company

553-3611 PA

## IMPORTANT NOTICE . . . about Discounts and Ratings

The longer you are insured with State Farm® and the fewer claims you have, the lower your premium. In accordance with Pennsylvania law, your basic premium will be adjusted based on the combination of the number of years you have been insured with State Farm and the number of qualified claims you have had in the last three years. This adjustment can range from a 20% premium credit for long term policyholders with zero qualified claims in the last three years, to a premium charge of up to 400% for policyholders with four or more qualified claims in the last three years.

Please contact your State Farm agent for information regarding how this plan applies to your policy.

553-3611 PA

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Agent: CHARLIE MONAHAN

Telephone: (610) 275-7600

State Farm Fire and Casualty Company
100 State Farm Place
Ballston Spa, NY 12020 8000

AT1 E-13- 6196-F0AE H W F

WELLS FARGO BANK NA
ITS SUCC AND/OR ASSIGNS
PO BOX 621530
ATLANTA GA 30362-3030

**RENEWAL CERTIFICATE**

POLICY NUMBER 78-PZ-7637-4
Homeowners Policy
NOV 15 2015 to NOV 15 2016

BILLED THROUGH SFPP

**Coverages and Limits**

**Section I**

| | | | |
|---|---|---|---|
| A | Dwelling | | $644,000 |
| | Dwelling Extension | Up To | 64,400 |
| B | Personal Property | | 483,000 |
| C | Loss of Use | | Actual Loss Sustained |

**Deductibles - Section I**

All Losses 1/2% 3,220

**Section II**

| | | |
|---|---|---|
| L | Personal Liability | $300,000 |
| | Damage to Property of Others | 500 |
| M | Medical Payments to Others (Each Person) | 5,000 |

Annual Premium $1,553.00

**Premium Reductions**

Home/Auto Discount 748.00
Claim Record Discount 534.00

Inflation Coverage Index: 245.0

Insured: AARON, TODD

Location: 307 BARREN HILL RD
CONSHOHOCKEN PA 19428-2405

SFPP No: 1113529913

**Loss Settlement Provisions (See Policy)**
A1 Replacement Cost - Similar Construction
B1 Limited Replacement Cost - Coverage B

**Forms, Options, and Endorsements**

| | |
|---|---|
| Homeowners Policy | FP-7955 |
| Increase Dwlg up to $128,800 | OPT ID |
| Ordinance/Law 10%/ $64,400 | OPT OL |
| Homeowners Policy Endorsement | FE-3518 |
| Amendatory Endorsement | FE-2340 |
| Jewelry and Furs $1,500/$2,500 | OPT JF |

Please help us update the data used to determine your premium. Contact your agent with the year each of your home's utilities (heating/cooling, plumbing, or electrical) and roof were last updated.

*Thanks for letting us serve you. We appreciate our long term customers.*

Agent CHARLIE MONAHAN
Telephone (610) 275-7600

Moving? See your State Farm agent.
See reverse for important information.
Prepared SEP 24 2015

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Mortgagee: WELLS FARGO BANK NA #936
Loan No: 0325748762
2nd Mtg: WELLS FARGO BANK NA
Loan No: 20062917700151

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

State Farm Fire and Casualty Company
100 State Farm Place
Ballston Spa, NY 12020-8000

POLICY NUMBER 78-P2-7637-4

HOMEOWNERS AVAILABLE COVERAGE NOTICE

SEE RENEWAL CERTIFICATE

AT1 E-13- 6106-FBAE H W F

AARON, TODD
307 BARREN HILL RD
CONSHOHOCKEN PA 19428-2405

IT IS IMPORTANT THAT YOU OCCASIONALLY REVIEW THE COVERAGES AND LIMITS IN YOUR HOMEOWNERS POLICY TO BE CERTAIN YOUR NEEDS ARE BEING MET. THE FOLLOWING INFORMATION WILL ASSIST YOU IN THE REVIEW PROCESS.

THE COVERAGE LIMITS FOR COVERAGE A - DWELLING, COVERAGE B - PERSONAL PROPERTY, COVERAGE L - PERSONAL LIABILITY, AND COVERAGE M - MEDICAL PAYMENTS TO OTHERS ARE LISTED ON THE ACCOMPANYING RENEWAL NOTICE. PLEASE REVIEW THESE LIMITS TO DETERMINE IF THEY ARE ADEQUATE IN THE EVENT OF A LOSS.

THE FOLLOWING IS A PARTIAL LIST OF THE OPTIONAL COVERAGES YOU HAVE NOT ADDED TO YOUR POLICY. THEY MAY BE AVAILABLE TO YOU FOR AN ADDITIONAL PREMIUM.

Back-Up of Sewer or Drain (for damage caused by water from outside the plumbing system which backs up through sewers or drains)

Building Ordinance or Law (higher limits)

Business Property (for higher limits)

Business Pursuits Liability (for teachers, school administrators, sales persons, and clerical workers)

Child Care Liability (for those providing child care in their home)

Earthquake

Firearms (for broadened coverage and higher limits)

Home Computers (for higher limits)

Identity Restoration

Incidental Business Liability (for those with an incidental office, studio, or school in the home)

Jewelry and Furs (for broadened coverage and higher limits)

Loss Assessment (for neighborhoods with Homeowners Associations)

**Optional Coverages continued on the reverse side**

**This notice contains only a general description of the coverages and is not a contract. All coverages are subject to the provisions in the policy itself. Should you have a need for any of these coverages or higher limits, contact your State Farm Agent to discuss details, cost and eligibility.**

IMPORTANT INFORMATION ABOUT DAMAGE CAUSED BY FLOODING

This policy does not cover damage to your property caused by flooding. You may be eligible for such coverage through the National Flood Insurance Program ("NFIP"), if you live in a participating community. For more information, contact your State Farm® agent or visit floodsmart.gov.

Agent CHARLIE MONAHAN
Telephone (610) 275-7600

Prepared SEP 24 2015

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

THE FOLLOWING IS A PARTIAL LIST OF THE OPTIONAL COVERAGES YOU HAVE NOT ADDED TO YOUR POLICY. THEY MAY BE AVAILABLE TO YOU FOR AN ADDITIONAL PREMIUM.

Nurses Professional Liability (for those in the nursing profession)

Personal Injury (for your liability to others caused by certain acts of libel, slander, invasion of privacy, false arrest)

Silverware/Goldware (for broadened coverage and higher limits)

Increased Personal Property (for higher limits above the standard policy limit, which is a percentage of your Cov A-Dwelling amount)

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

# EXHIBIT B

StateFarm

# Summary of Loss

Named Insured: Aaron
Claim Number: 38-8W27-068

Coverage A - Dwelling — Limit of Liability: $
Coverage A - Dwelling Extension — Limit of Liability: $

| Description | Amount |
|---|---|
| Ryan Tree Service within policy limit | $ 11,000.00 |
| SM water mitigation | $ 6,184.47 |
| GLP estimate (Our expert) | $ 131,185.56 |

Total Coverage A: $ 148,370.03

Coverage B - Personal Property — Limit of Liability: $

| Description | Amount |
|---|---|
| SP moving invoice | $ 3,116.02 |

Total Coverage B: $ 3,116.02

Coverage C - Loss of Use — Limit of Liability: $

| Description | Amount |
|---|---|
| ALE Solutions 7/25-8/13 | $ 4,331.88 |
| Mike Mateo rent September | $ 3,200.00 |
| Mike Mateo rent and security 8/12-8/31 | $ 5,264.50 |
| Mike Mateo rent October | $ 3,200.00 |

Total Coverage C: $ 15,996.38

Other Coverages (if applicable)

Total Other Coverages (if applicable): $ 0.00

Payments Made

| Date | Amount | Description |
|---|---|---|
| 8/5/2016 | $ 10,680.00 | tree removal invoice |
| 8/9/2016 | $ 5,264.50 | Mike Mateo 8/12-9/12 and security |
| 8/29/2016 | $ 6,184.47 | water mitigation |
| 9/9/2016 | $ 3,200.00 | Mike Mateo rent 9/12-10/12 |
| 9/14/2016 | $ 3,116.02 | SP for pack-out/move |
| 9/14/2016 | $ 4,331.88 | ALE Solutions, 7/25-8/13 |
| 9/23/2016 | $ 119,111.16 | |

Comments / Supplements:

absorbed $2,900 of the $3,220 deductible because of the tree invoice

Coverage A+B+C Total: $ 167,482.43
Other Coverages (if applicable): $

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

being above the policy limit.

| | |
|---|---|
| | 0.00 |
| Total All Coverages: $ | 167,482.43 |
| Less Recoverable Dep. Cov. A: $ | 12,074.40 |
| Paid When Incurred: $ | 0.00 |
| Less Non-Recoverable Dep. Cov. A: $ | 0.00 |
| Less Recoverable Dep. Cov. B: $ | 0.00 |
| Less Non-Recoverable Dep. Cov. B: $ | 0.00 |
| Subtotal: $ | 155,408.03 |
| Less Deductible: $ | 320.00 |
| Less Amounts Over Limit(s): $ | 0.00 |
| Less Ordered Items: $ | 0.00 |
| Less Owner Retained Salvage: $ | 0.00 |
| Total Payable: $ | 155,088.03 |
| Less Total Payments Made: $ | 151,888.03 |
| Net Payment: $ | 3,200.00 |

Donald Worrell
*Signature*

10/4/2016
*Date*

** Your policy may provide for additional payments on a replacement cost basis for the Recoverable Depreciation listed above for Cov.A and Cov. B. for your Building and Personal Property.*
*Please refer to your policy for specific time limits and additional settlement provisions.*
*Please contact your claim representative if you have any questions.*

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

# EXHIBIT C

652666



GLP Construction Management, Inc.
Consulting Engineers & General Contractors

REPORT PREPARED FOR

# STATE FARM INSURANCE COMPANY

CLAIM# 38 8W27 - 068
TODD AARON
307 BARREN HILL ROAD
CONSHOHOCKEN, PA. 19428

FILE: 11854
FILE NAME: 11854ERD.RC
DISK: R - 16
CODE: 032

SEPTEMBER 13, 2016

REPORT PREPARED BY:

GARY L. POPOLIZIO, P.E.
GLP CONSTRUCTION MANAGEMENT, INC.
P.O. BOX 168
MONTGOMERYVILLE, PA 18936

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

**PURPOSE:**

The intent of this report and my inspection was to provide a visual review of the observable conditions for the residence located at 307 Barren Hill Road in Conshohocken, Pennsylvania, as they related to a tree impact event onto the front portion of the dwelling and to opine as to potential extent of damage to the building based upon a reasonable degree of engineering and construction certainty.

**SITE VISIT:**

| | | | |
|---|---|---|---|
| DATE: | August 5, 2016 | | |
| WEATHER: | Sunny, 79° F | | |
| CONTACT: | Mr. Todd Aaron | - | Homeowner |
| | Mr. Ryan Chapple | - | State Farm Insurance Company |

**GENERAL CONDITIONS:**

The residence located at 307 Barren Hill Road in Conshohocken, Pennsylvania is comprised of a single-family, two-story styled residential structure set within a suburban neighborhood community with other homes of individual architecture and design northwest of the city of Philadelphia.

The home is constructed on a stone and block masonry substructure (foundation or portion of the building below grade level) whose design function is to carry loads from the building above down to the bearing soils below. The superstructure (portion of the building above grade level) is assembled utilizing stone masonry walls in conjunction with conventional framing techniques commonly employed within older residential buildings.

The roof assembly on the home is comprised of a gable "A" style design covered with a standing seam metal roof material. The siding consists primarily of an exposed stone and horizontal vinyl cladding placed over the exterior vertical elevations on the building.

The grounds around the residence are characterized as maintained grass surfaces intermixed with large mature trees and established landscaped plantings set on a sloped and terraced terrain that is consistent with the ground profile within the neighborhood. An asphalt driveway provides vehicle access to the property from the main thoroughfare.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

**BACKGROUND/HISTORY:**

At the time of my site inspection of the property, conversation with Mr. Aaron provided a brief background and history of the residence with the following overview of information provided:

- The home was constructed around 1940 and he has resided at this residence for approximately 8-9 years.
- Many of the interior finishes were redone after his purchase of the property.
- The metal roof was installed approximately 4 years ago.
- A large tree located in front of the residence recently fell onto the home in the area where the master bedroom was situated. Concerns toward damage to the dwelling were expressed from this event.
- ServiceMaster of Bux-Mont performed the interior drying of the home with some of their equipment active and in place at this time.

**FINDINGS:**

During my inspection of the property a review of the residence was performed including observations to the interior and exterior finishes and features on the subject home. An overview summary of my observations has been presented below:

General & Exterior:

- The front of the residence faced in a northwesterly direction with evidence of the remnants of a large tree stump situated off the front corner of the home.
- The front right section (as oriented by viewing the residence from the front) showed direct signs of impact damage focused along the master bedroom area. Here a section of the roof was clearly crushed with a temporary tarp covering over a portion of this roof area.
- Damage to a portion of the wood framed upper front gable end wall over the master bedroom area from the tree impact was evident.
- Some residual impact effects to the standing seam metal roof around the main impact area were also observed.
- The front wall of the master bedroom exhibited some signs of cracking through the stone and mortar wall system. This cracking effect was noted primarily beneath the front window opening.
- The stone exterior on the home appeared weathered with most of the cement-based mortar joints porous and granular in nature.
- Other cracks within the stone and mortar exterior were also noted, with evidence of weathering and rounding of the crack edges typical of an older feature.

- A portion of the front gutter along the central portion of the home was partially dislodged and damaged from the tree impact.
- Signs of some impact influences to the ground level slate walkway stepping blocks were also found.
- A section of the lower back gutter also showed signs of some impact influence.

Interior – Master Bedroom, Closet & Bath:

- The master bedroom was where the focus of the tree impact occurred with damage to the interior finishes, drywall, and roof framing members. The damages were situated mainly along the front portion of the room with some residual cracks observed within the remaining ceiling and interior wall surfaces.
- Through openings in the walls, it was noted that the use of 2"x 4" vertical framing studs were placed on the inner wall surface adjoined by a stone exterior covering.
- A vertical crack over the window opening within the Master Bathroom was noted. This crack presented a recently formed appearance with sharper edges and surfaces.
- The tiled surfaces within the Master Bathroom appeared stable with no visible indications of any shifting, cracking, or instabilities from the tree impact.

Interior – Foyer, Hall & Closets:

- Small, lineal cracks were observed within the Foyer ceiling near the front entry door and by the back Hallway area.
- The wood floor in front of the back laundry room closet was also noted to "squeak" slightly when walked on.
- Door units within this area of the home functioned properly with no indication of any binding or recent shifting effects.
- Some slight, minor separations along where the crown molding interfaced with the wall/ceiling surface within the Foyer area were also found.

Interior – Back Bedroom & Bath:

- Small hairline cracks over the doorways leading to the Hallway and to the Bathroom. The door units were found to open and close with no indications of any shifting of their frames.
- Older ceiling repairs within the Bedroom were also observed that were not related to the recent tree impact event.
- A small horizontal crack in the wall next to the Bathroom window was also present. This feature presented a newly formed condition.

Interior – Living Room, Dining Room, Game Room:

- Two lineal cracks within the ceiling area of this room were observed. These cracks extended across most of the room length and followed near where the recessed ceiling lights were located.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

- An inspection of the corners at the wall openings and front window unit within the living room found no indication of any recent shifting or movement effects.
- An inspection of the corners at wall/door openings and window units within the Dining and Game rooms also found no evidence of any recent cracking or shifting effects.

**Interior – Kitchen:**

- The Kitchen area was situated toward the back, central portion of the 1st floor living space within the home.
- The tiled and painted surfaces within the Kitchen were found to be stable with no visible indication of any recent movement, shifting, or cracks.

**Interior – 2nd Floor:**

- The upper level within the home contained a bathroom, two large rooms, and a central hall/stairway area.
- Some limited signs of hairline sized cracks and nail-pops within the larger room areas were observed with no evidence of any recent shifting within the bathroom or central hall/stairway area.
- Door and window units within this upper level of the home were found to function properly with no indication of recent binding or movement.
- The wood floor in the upper left room was noted to slope slightly downward toward the entryway door. The door, trim, wall, and ceiling finishes in this area remained stable with no signs of shifting, recently formed gaps, or separations.

**Basement & Crawlspace:**

- The Crawlspace area existed primarily beneath the right side (as oriented by viewing the home from the front) of the residence that extended beneath the Master Bedroom, Closet, and Bath areas.
- Viewing the wood framing, stone masonry walls, and stone piers found no indication of any recent shifting or movement.
- Joist pockets where the wood framing interfaced with the stone foundation also presented a stable appearance with no indication of any cracking, shifting, or movement within the foundation or wood framing members.
- The Crawlspace did exhibit signs of older moisture, ground and surface water effects that were not related to the recent tree impact event.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

**CONCLUSIONS:**
Based on my observations made at the property, along with a reasonable degree of engineering and construction certainty it is my opinion that the home has incurred damage directly related to the recent tree impact event.

These damages were focused primarily toward the front Master Bedroom area where the greatest effects of the impact were visible and included the wood roof framing as well as a portion of the exterior front stone wall. Crushing of the wood roof framing members closest to the front of the home over the Master Bedroom has occurred as well as the formation/enlargement of a crack within the exterior front stone wall beneath the window within the Master Bedroom.

Lesser residual effects from the tree impact emanating out from the Master Bedroom were also incurred within the residence to some of the adjoining rooms such as the Foyer, Back Bedroom, and Living Room areas in the form of minor cracking and separations within the finishes.

In addition, damages to the more recently installed standing seam metal roof were also incurred from the fallen tree. The effects to the roof were clearly seen over the Master Bedroom area of the home where the main impact occurred with some added influences in wider spread random locations, including on the back roof slopes from branches stemming out from the main tree trunk. Based on the spread out nature of the damages to the roof, it is my opinion that repairs would entail its complete removal and replacement in order to achieve a weather-tight system over the home.

With regard to the flooring within the 1st and 2nd floor levels of the residence, replacement of the finished wood floors in the Master Bedroom area, Foyer and Hallway, as well as the adjoining 1st floor Living Room would be anticipated to facilitate the repairs and provide some continuity of the finishes that extend within these rooms within the home. Refinishing the wood floor surfaces in adjoining rooms would be expected due to added construction wear from the repairs to the damages noted within the residence. It is my opinion that wood floors observed on the 2nd floor level were unaffected by the impact and would not be adversely influenced by the restoration efforts anticipated for the subject home. The sloped condition of the wood floor at the doorway near the central hall area of the 2nd floor is an older feature as exhibited by the lack of any signs of movement or shifting within the adjoining finishes (i.e. door trim, walls, etc.) at this location.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

As part of this report, an estimate of expected repair costs associated with the tree impact event has been prepared. This estimate is based upon the visible conditions available at the time of my review with the potential for some unforeseen items uncovered during the restoration process. I would recommend that any work undertaken at the subject home be conducted by qualified licensed professionals familiar with work, buildings, and materials of this nature and that all local and national codes and inspections be followed. Items regarding the building structure, components, or load bearing systems should be reviewed by an appropriate licensed design professional.

This report does not constitute a full design review of the home and is based on the conditions noted at the time of my review. The attached estimate is intended to provide a general cost guide based upon a prescribed scope of work toward the potential repairs anticipated for the subject home. I reserve my right to amend or supplement this report should any new information or documents be presented, or if further clarifications are required.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

GLP CONSTRUCTION MANAGEMENT, INC
P.O. BOX 168
MONTGOMERYVILLE, PA. 18936
(215) 997 -7360

| | | | |
|---|---|---|---|
| INSURED'S NAME: Todd Aaron, 307 Barren Hill Road, Conshohocken, PA. 19428 | ESTIMATE DATE: 13-Sep-16 | JOB NO#: 11854 | DISK NO#: R-16 |
| CLAIM NUMBER#: 38 8W27 - 068 | WORK/LOSS DESCRIPTION: This is an estimate of expected costs to restore the home that was adversely influenced by a recent tree impact event onto the front portion of the dwelling. The costs presented are based upon the visible conditions available at the time of my review and do not include pricing for the tree removal, emergency services, or contents (if applicable). | | |
| INSURANCE COMPANY: State Farm Insurance Company | | | |

ROOM: Exterior & Sitework

| DESCRIPTION | QTY | UNIT | U.P | RCV | Depreciation | ACV |
|---|---|---|---|---|---|---|
| R/R lamp post | 1.00 | ea | $525.00 | $525.00 | 30 | $367.50 |
| R/R 6' arborvitae bushes | 5.00 | ea | $125.00 | $625.00 | | $625.00 |
| R/R snow fence | 20.00 | lf | $7.33 | $146.60 | 35 | $95.29 |
| Grade/seed front lawn after repairs (allow) | 1.00 | ls | $1,200.00 | $1,200.00 | | $1,200.00 |
| R/Reset front slate walk - separate pcs | 25.00 | ea | $15.00 | $375.00 | | $375.00 |
| R/Reset front slate walkway | 90.00 | sf | $12.70 | $1,143.00 | | $1,143.00 |
| R/Reset front slate patio | 270.00 | sf | $12.70 | $3,429.00 | | $3,429.00 |
| R/R standing seam metal roofing | 2350.00 | sf | $17.75 | $41,712.50 | 5 | $39,626.88 |
| R/R snow guards | 66.00 | ea | $55.12 | $3,637.92 | 5 | $3,456.02 |
| R/R valley flashings/underlayment | 4.00 | ea | $250.00 | $1,000.00 | 5 | $950.00 |
| R/R 6" K alum gutters | 139.00 | lf | $5.88 | $817.32 | 5 | $776.45 |
| R/R 3x4 alum downspouts | 50.00 | lf | $5.10 | $255.00 | 5 | $242.25 |
| R/R gutter leaf guard | 79.00 | lf | $6.70 | $529.30 | 5 | $502.84 |
| R/R 6" vinyl siding w/ insulated backing | 308.00 | sf | $4.50 | $1,386.00 | 10 | $1,247.40 |
| R/R/Reset front stone fascade | 207.00 | sf | $35.50 | $7,348.50 | | $7,348.50 |
| Assumes 75% stone salvage | | | | | | |
| R/R chain link fence (4' ht) | 50.00 | lf | $12.50 | $625.00 | 40 | $375.00 |
| R/R chain link fence gate | 1.00 | ea | $35.42 | $35 42 | 40 | $21.25 |
| R/R front fascia boards (1" x 8") | 18.00 | lf | $3.50 | $63.00 | 15 | $53.55 |
| R/R front ralke boards (1"x 6") | 30.00 | lf | $3.00 | $90.00 | 15 | $76.50 |
| R/R front fascia capping | 48.00 | lf | $4.55 | $218.40 | 10 | $196.56 |
| R/R front window trim | 19.00 | lf | $2.75 | $52.25 | 10 | $47.03 |
| R/R front shutters | 2.00 | ea | $33.90 | $67.80 | 10 | $61.02 |
| R/R front soffit | 48.00 | lf | $5.65 | $271.20 | 10 | $244.08 |
| ROOM SUBTOTAL: | | | | $65,553.21 | | $62,460.12 |

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

ROOM: Framing - Roof

| DESCRIPTION | QTY | UNIT | U.P | RCV | Depreciation | ACV |
|---|---|---|---|---|---|---|
| R/R 2"x 6"x 16' roof rafters | 18.00 | ea | $46.92 | $844.56 | | $844.56 |
| R/R 2"x 8" ridge board | 14.00 | lf | $2.93 | $41.06 | | $41.06 |
| Temp ridge brd supports | 2.00 | ea | $225.00 | $450.00 | | $450.00 |
| R/R 2"x 6" collar ties | 30.00 | lf | $2.93 | $87.98 | | $87.98 |
| R/R 1/2" plywood roof sheathing | 625.00 | sf | $1.99 | $1,243.75 | | $1,243.75 |
| R/R 1/2" plywood gable wall sheathing | 125.00 | sf | $1.99 | $248.75 | | $248.75 |
| R/R 2"x 10" header over front window | 7.00 | lf | $15.60 | $109.20 | | $109.20 |
| Misc framing & tie-ins | | | | | | |
| Labor (2 carpenters) | 8.00 | hr | $150.00 | $1,200.00 | | $1,200.00 |
| Materials (lumber, fasteners) | 1.00 | ls | $155.00 | $155.00 | | $155.00 |
| | | | ROOM SUBTOTAL: | $4,380.29 | | $4,380.29 |

ROOM: 1st Flr Master Bdrm L: 19.25 W: 12.17 H: 7.50 - 11.00

| DESCRIPTION | QTY | UNIT | U.P | RCV | Depreciation | ACV |
|---|---|---|---|---|---|---|
| R/R ceiling drywall | 292.84 | sf | $2.05 | $600.32 | 15 | $510.27 |
| R/R ceiling insulation | 292.84 | sf | $1.10 | $322.12 | 15 | $273.81 |
| R/R wall drywall | 471.23 | sf | $2.05 | $966.01 | 15 | $821.11 |
| R/R wall insulation (1L - 2S) | 320.85 | sf | $0.90 | $294.17 | 15 | $250.04 |
| R/R 3pc base trim | 62.83 | lf | $7.05 | $442.95 | 10 | $398.66 |
| R/R window trim | 32.00 | lf | $2.35 | $75.20 | 10 | $67.68 |
| R/R front window unit - double | 1.00 | ea | $625.00 | $625.00 | 10 | $562.50 |
| R/R window blinds | 3.00 | ea | $175.00 | $525.00 | 12 | $462.00 |
| R/R 2pc crown trim (2S - 1L) | 43.58 | lf | $4.70 | $204.83 | 10 | $184.34 |
| R/R door trim | 51.00 | lf | $2.35 | $119.85 | 10 | $107.87 |
| R/R HC interior doors | 3.00 | ea | $230.00 | $690.00 | 10 | $621.00 |
| R/R 3/4"x 2 1/4" oak wood flooring | 234.27 | sf | $8.88 | $2,080.34 | 35 | $1,352.22 |
| Sand/Finish wood flooring | 234.27 | sf | $4.15 | $972.23 | 35 | $631.95 |
| R/R recessed light units | 4.00 | ea | $175.00 | $700.00 | 10 | $630.00 |
| R/R ceiling fan/light | 1.00 | ea | $470.00 | $470.00 | 10 | $423.00 |
| R/R outlets/switches | 7.00 | ea | $65.55 | $458.85 | | $458.85 |
| R/R 2"x 4" x 8' wall studs | 19.00 | ea | $12.43 | $236.17 | | $236.17 |
| R/R 2"x 4" wall plates | 69.00 | lf | $2.78 | $191.82 | | $191.82 |
| Misc wall framing | 1.00 | hr | $150.00 | $150.00 | | $150.00 |
| R/Reset window treatments | 2.00 | ea | $75.00 | $150.00 | | $150.00 |
| R/Reset smoke detector | 1.00 | ea | $25.00 | $25.00 | | $25.00 |
| R/Reset contents | 1.50 | hr | $55.00 | $82.50 | | $82.50 |
| Paint ceiling | 292.84 | sf | $0.82 | $240.13 | 20 | $192.10 |
| Paint walls | 471.23 | sf | $0.82 | $386.40 | 20 | $309.12 |
| Paint base trim | 62.83 | lf | $1.00 | $62.83 | 20 | $50.26 |
| Paint crown trim | 43.58 | lf | $1.00 | $43.58 | 20 | $34.86 |
| Paint door trim | 51.00 | lf | $1.00 | $51.00 | 20 | $40.80 |
| Paint doors (per side) | 3.00 | ea | $25.00 | $75.00 | 20 | $60.00 |
| Paint window trim | 32.00 | lf | $1.00 | $32.00 | 20 | $25.60 |
| Paint windows | 2.00 | ea | $35.00 | $70.00 | 20 | $56.00 |
| Daily room cleaning | 1.00 | hr | $55.00 | $55.00 | | $55.00 |
| | | | ROOM SUBTOTAL: | $11,398.31 | | $9,414.54 |

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

ROOM: 1st Flr Master Clst L: 5.33 W: 5.50 H: 7.50
L: 2.50 W: 2.84 H: 7.50

| DESCRIPTION | QTY | UNIT | U.P | RCV | Depreciation | ACV |
|---|---|---|---|---|---|---|
| R/R 3/4"x 2 1/4" oak wood flooring | 36.42 | sf | $8.88 | $323.37 | 35 | $210.19 |
| Sand/Finish wood flooring | 36.42 | sf | $4.15 | $151.12 | 35 | $98.23 |
| R/R shoe molding | 26.67 | lf | $2.35 | $62.67 | 10 | $56.41 |
| R/R door trim | 17.00 | lf | $2.35 | $39.95 | 10 | $35.96 |
| R/Reset wire rack shelving | 4.00 | hr | $75.00 | $300.00 | | $300.00 |
| R/Reset ceiling light | 1.00 | ea | $35.00 | $35.00 | | $35.00 |
| R/Reset contents | 1.00 | hr | $55.00 | $55.00 | | $55.00 |
| Paint ceiling | 36.42 | sf | $0.82 | $29.86 | 20 | $23.89 |
| Paint walls | 200.03 | sf | $0.82 | $164.02 | 20 | $131.22 |
| Paint base trim | 26.67 | lf | $1.00 | $26.67 | 20 | $21.34 |
| Paint door trim | 17.00 | lf | $1.00 | $17.00 | 20 | $13.60 |
| Paint doors (per side) | 1.00 | ea | $25.00 | $25.00 | 20 | $20.00 |
| | | | ROOM SUBTOTAL: | $1,229.66 | | $1,000.82 |

ROOM: 1st Flr Master Bath L: 5.17 W: 10.50 H: 7.50

| DESCRIPTION | QTY | UNIT | U.P | RCV | Depreciation | ACV |
|---|---|---|---|---|---|---|
| Drywall repair over side window (min) | 1.00 | ls | $125.00 | $125.00 | | $125.00 |
| R/R door trim | 17.00 | lf | $2.35 | $39.95 | 10 | $35.96 |
| R/Reset mirror | 1.00 | ea | $18.00 | $18.00 | | $18.00 |
| R/Reset window treatment | 1.00 | ea | $75.00 | $75.00 | | $75.00 |
| R/Reset bath accessories | 3.00 | ea | $18.00 | $54.00 | | $54.00 |
| R/Reset contents | 0.50 | hr | $55.00 | $27.50 | | $27.50 |
| Paint ceiling | 54.29 | sf | $0.82 | $44.51 | 20 | $35.61 |
| Paint walls (2S - 1L) (4.17' ht) | 85.49 | sf | $0.82 | $70.10 | 20 | $56.08 |
| Paint window sill | 3.50 | lf | $1.00 | $3.50 | 20 | $2.80 |
| Clean tile | 2.00 | hr | $55.00 | $110.00 | | $110.00 |
| | | | ROOM SUBTOTAL: | $567.56 | | $539.94 |

ROOM: Foyer/Hall/Clsts
L: 7.42 W: 16.00 H: 7.50 - Foyer
L: 3.00 W: 5.83 H: 7.50 - Hall w/ foyer clst
L: 5.58 W: 7.25 H: 7.50 - Hall w/ clsts
L: 3.00 W: 3.50 H: 7.50 - Laundry clst

| DESCRIPTION | QTY | UNIT | U.P | RCV | Depreciation | ACV |
|---|---|---|---|---|---|---|
| R/R 3/4"x 2 1/4" oak wood flooring | 187.17 | sf | $8.88 | $1,662.03 | 35 | $1,080.32 |
| Sand/Finish wood flooring | 187.17 | sf | $4.15 | $776.73 | 35 | $504.88 |
| R/R shoe molding | 103.58 | lf | $2.35 | $243.41 | 10 | $219.07 |
| Drywall repair at foyer ceiling (min) | 1.00 | ls | $125.00 | $125.00 | | $125.00 |
| R/Reset ceiling lights | 2.00 | ea | $35.00 | $70.00 | | $70.00 |
| R/Reset interior doors | 3.00 | ea | $22.00 | $66.00 | | $66.00 |
| R/Reset stacked washer/dryer units | 1.00 | ea | $80.00 | $80.00 | | $80.00 |

 GLP Construction Management

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

| DESCRIPTION | QTY | UNIT | U.P | RCV | Depreciation | ACV |
|---|---|---|---|---|---|---|
| R/Reset contents | 1.50 | hr | $55.00 | $82.50 | | $82.50 |
| Subfloor repairs (squeaks in hall) | 1.00 | hr | $75.00 | $75.00 | | $75.00 |
| Paint ceiling | 187.17 | sf | $0.82 | $153.48 | 20 | $122.78 |
| Paint base trim | 103.58 | lf | $1.00 | $103.58 | 20 | $82.86 |
| Paint crown trim | 103.58 | lf | $1.00 | $103.58 | 20 | $82.86 |
| Paint door trim | 208.00 | ea | $1.00 | $208.00 | 20 | $166.40 |
| Paint doors (per side) | 11.00 | ea | $25.00 | $275.00 | 20 | $220.00 |
| Daily room cleaning | 2.00 | hr | $55.00 | $110.00 | | $110.00 |
| | | | ROOM SUBTOTAL: | $4,134.31 | | $3,087.67 |

ROOM: 1st Flr Back Bedrm L: 15.33 W: 11.25 H: 7.50

| DESCRIPTION | QTY | UNIT | U.P | RCV | Depreciation | ACV |
|---|---|---|---|---|---|---|
| Sand/Finish wood flooring | 172.46 | sf | $4.15 | $715.72 | 35 | $465.22 |
| R/R shoe molding | 53.17 | lf | $2.35 | $124.95 | 10 | $112.45 |
| Drywall repair at upper dr corners (min) | 1.00 | ls | $125.00 | $125.00 | | $125.00 |
| R/Reset smoke detector | 1.00 | ea | $25.00 | $25.00 | | $25.00 |
| R/Reset interior doors | 2.00 | ea | $22.00 | $44.00 | | $44.00 |
| R/Reset window treatments | 2.00 | ea | $75.00 | $150.00 | | $150.00 |
| R/Reset contents | 1.00 | hr | $55.00 | $55.00 | | $55.00 |
| Paint base trim | 53.17 | lf | $1.00 | $53.17 | 20 | $42.54 |
| Paint door trim | 34.00 | lf | $1.00 | $34.00 | 20 | $27.20 |
| Paint doors (per side) | 2.00 | ea | $25.00 | $50.00 | 20 | $40.00 |
| Paint window sill | 7.00 | lf | $1.00 | $7.00 | 20 | $5.60 |
| Paint walls | 398.78 | sf | $0.82 | $327.00 | 20 | $261.60 |
| Daily room cleaning | 2.00 | hr | $55.00 | $110.00 | | $110.00 |
| | | | ROOM SUBTOTAL: | $1,820.83 | | $1,463.60 |

ROOM: 1st Flr Back Bath L: 5.25 W: 6.17 H: 7.50

| DESCRIPTION | QTY | UNIT | U.P | RCV | Depreciation | ACV |
|---|---|---|---|---|---|---|
| Sand/Finish wood flooring | 32.39 | sf | $4.15 | $134.43 | 35 | $87.38 |
| R/R shoe molding | 22.83 | lf | $2.35 | $53.65 | 10 | $48.29 |
| Drywall repair at wndw corner (min) | 1.00 | ls | $125.00 | $125.00 | | $125.00 |
| R/Reset toilet | 1.00 | ea | $97.75 | $97.75 | | $97.75 |
| R/Reset pedestal sink w/ faucet | 1.00 | ea | $175.00 | $175.00 | | $175.00 |
| R/Reset contents | 1.00 | hr | $55.00 | $55.00 | | $55.00 |
| Paint base trim | 22.83 | lf | $1.00 | $22.83 | 20 | $18.26 |
| Paint door trim | 17.00 | lf | $1.00 | $17.00 | 20 | $13.60 |
| Paint doors (per side) | 1.00 | ea | $25.00 | $25.00 | 20 | $20.00 |
| Paint window sill | 3.00 | lf | $1.00 | $3.00 | 20 | $2.40 |
| Paint walls | 171.23 | sf | $0.82 | $140.40 | 20 | $112.32 |
| Daily room cleaning | 1.00 | hr | $55.00 | $55.00 | | $55.00 |
| | | | ROOM SUBTOTAL: | $904.06 | | $810.00 |

 

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

ROOM: 1st Flr Living Rm L: 21.50 W: 15.42 H: 7.50

| DESCRIPTION | QTY | UNIT | U.P | RCV | Depreciation | ACV |
|---|---|---|---|---|---|---|
| R/R 3/4"x 2 1/4" oak wood flooring | 331.53 | sf | $8.88 | $2,943.59 | 35 | $1,913.59 |
| Sand/Finish wood flooring | 331.53 | sf | $4.15 | $1,375.85 | 35 | $894.30 |
| R/R shoe molding | 73.83 | lf | $2.35 | $173.50 | 10 | $156.15 |
| Drywall repair at ceiling (lg min) | 1.00 | ls | $175.00 | $175.00 | | $175.00 |
| R/Reset recessed light trims | 8.00 | ea | $22.00 | $176.00 | | $176.00 |
| R/Reset contents | 2.00 | hr | $55.00 | $110.00 | | $110.00 |
| Paint ceiling | 331.53 | sf | $0.82 | $271.85 | 20 | $217.48 |
| Paint walls (2L - 1S) | 438.15 | sf | $0.82 | $359.28 | 20 | $287.43 |
| Paint base trim | 73.83 | lf | $1.00 | $73.83 | 20 | $59.06 |
| Paint crown trim | 73.83 | lf | $1.00 | $73.83 | 20 | $59.06 |
| Paint door/opening trim | 42.00 | lf | $1.00 | $42.00 | 20 | $33.60 |
| Paint window trim | 32.00 | lf | $1.00 | $32.00 | 20 | $25.60 |
| Daily room cleaning | 2.00 | hr | $55.00 | $110.00 | | $110.00 |
| | | | ROOM SUBTOTAL: | $5,917.13 | | $4,217.28 |

ROOM: Dining Room L: 12.75 W: 14.33 H: 7.50

| DESCRIPTION | QTY | UNIT | U.P | RCV | Depreciation | ACV |
|---|---|---|---|---|---|---|
| Sand/Finish wood flooring | 182.71 | sf | $4.15 | $758.24 | 35 | $492.85 |
| R/R shoe molding | 54.17 | lf | $2.35 | $127.30 | 10 | $114.57 |
| R/Reset contents | 1.00 | hr | $55.00 | $55.00 | | $55.00 |
| Paint base trim | 54.17 | lf | $1.00 | $54.17 | 20 | $43.34 |
| Paint door/opening trim | 73.00 | lf | $1.00 | $73.00 | 20 | $58.40 |
| Paint door (per opening) | 1.00 | ea | $25.00 | $25.00 | 20 | $20.00 |
| Paint window trim | 15.00 | lf | $1.00 | $15.00 | 20 | $12.00 |
| Paint window | 1.00 | ea | $35.00 | $35.00 | 20 | $28.00 |
| Paint crown trim | 54.17 | lf | $1.00 | $54.17 | 20 | $43.34 |
| Daily room cleaning | 1.00 | hr | $55.00 | $55.00 | | $55.00 |
| | | | ROOM SUBTOTAL: | $1,251.88 | | $922.50 |

ROOM: Game Room L: 22.50 W: 14.33 H: 7.50

| DESCRIPTION | QTY | UNIT | U.P | RCV | Depreciation | ACV |
|---|---|---|---|---|---|---|
| Sand/Finish wood flooring | 322.43 | sf | $4.15 | $1,338.06 | 35 | $869.74 |
| R/R shoe molding | 73.67 | lf | $2.35 | $173.12 | 10 | $155.81 |
| R/Reset contents | 2.00 | hr | $55.00 | $110.00 | | $110.00 |
| Paint base trim | 73.67 | lf | $1.00 | $73.67 | | $73.67 |
| Paint door/opening trim | 73.00 | lf | $1.00 | $73.00 | 20 | $58.40 |
| Paint door (per opening) | 3.00 | ea | $25.00 | $75.00 | 20 | $60.00 |
| Paint window trim | 46.00 | lf | $1.00 | $46.00 | 20 | $36.80 |
| Paint window | 4.00 | ea | $35.00 | $140.00 | 20 | $112.00 |
| Paint crown trim | 73.67 | lf | $1.00 | $73.67 | 20 | $58.94 |
| Daily room cleaning | 1.00 | hr | $55.00 | $55.00 | | $55.00 |
| | | | ROOM SUBTOTAL: | $2,157.53 | | $1,590.36 |

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

ROOM: Kitchen L: 21.50 W: 14.33 H: 7.50

| DESCRIPTION | QTY | UNIT | U.P | RCV | Depreciation | ACV |
|---|---|---|---|---|---|---|
| Clean room | 4.00 | hr | $55.00 | $220.00 | | $220.00 |
| R/Reset contents | 2.00 | hr | $55.00 | $110.00 | | $110.00 |
| ROOM SUBTOTAL: | | | | $330.00 | | $330.00 |

ROOM: 2nd Flr Right Bedrm L: 16.50 W: 14.25 H: 7.42
L: 9.75 W: 5.42 H: 7.42
L: 4.00 W: 4.75 H: 7.42

| DESCRIPTION | QTY | UNIT | U.P | RCV | Depreciation | ACV |
|---|---|---|---|---|---|---|
| Drywall repairs (lg min) | 1.00 | ls | $175.00 | $175.00 | | $175.00 |
| R/Reset ceiling fan/light | 1.00 | ea | $125.00 | $125.00 | | $125.00 |
| R/Reset recessed light trims | 6.00 | ea | $22.00 | $132.00 | | $132.00 |
| R/Reset contents | 1.00 | hr | $55.00 | $55.00 | | $55.00 |
| Paint ceiling | 306.97 | sf | $0.82 | $251.72 | 20 | $201.37 |
| Paint walls | 601.61 | sf | $0.82 | $493.32 | 20 | $394.66 |
| ROOM SUBTOTAL: | | | | $1,232.04 | | $1,083.03 |

ROOM: 2nd Flr Left Bedrm L: 24.00 W: 14.25 H: 7.42
L: 13.83 W: 6.00 H: 7.42
L: 4.00 W: 4.75 H: 7.42

| DESCRIPTION | QTY | UNIT | U.P | RCV | Depreciation | ACV |
|---|---|---|---|---|---|---|
| Drywall repairs (lg min) | 1.00 | ls | $175.00 | $175.00 | | $175.00 |
| R/Reset ceiling fan/light | 1.00 | ea | $125.00 | $125.00 | | $125.00 |
| R/Reset recessed light trims | 2.00 | ea | $22.00 | $44.00 | | $44.00 |
| R/Reset contents | 1.00 | hr | $55.00 | $55.00 | | $55.00 |
| Paint ceiling | 443.98 | sf | $0.82 | $364.06 | 20 | $291.25 |
| Paint walls | 728.42 | sf | $0.82 | $597.31 | 20 | $477.84 |
| ROOM SUBTOTAL: | | | | $1,360.37 | | $1,168.10 |

ROOM: General

| DESCRIPTION | QTY | UNIT | U.P | RCV | Depreciation | ACV |
|---|---|---|---|---|---|---|
| Debris removal/cleanup (labor) | 8.00 | hr | $55.00 | $440.00 | | $440.00 |
| Debris removal/hauloff (dump) | 1.00 | ea | $675.00 | $675.00 | | $675.00 |
| Electrical service check | 1.00 | ea | $550.00 | $550.00 | | $550.00 |
| Temporary tarps & protections | | | | | | |
| Labor (2 carpenters) | 8.00 | hr | $150.00 | $1,200.00 | | $1,200.00 |
| Materials (lumber, tarps, fasteners) | 1.00 | ea | $155.00 | $155.00 | | $155.00 |
| Final house cleaning | 16.00 | hr | $55.00 | $880.00 | | $880.00 |
| ROOM SUBTOTAL: | | | | $3,900.00 | | $3,900.00 |

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

| | | |
|---|---|---|
| SUBTOTAL: | $106,137.18 | $96,368.25 |
| 10% OVERHEAD: | $10,613.72 | $9,636.83 |
| 10% PROFIT: | $10,613.72 | $9,636.83 |
| SUBTOTAL: | $127,364.62 | $115,641.90 |
| 3% TAX/INS/PERMITS: | $3,820.94 | $3,469.26 |
| SUBTOTAL: | $131,185.56 | $119,111.16 |
| Eng/Arch fees: | As invoiced | As invoiced |
| ESTIMATED VALUE: | $131,185.56 | $119,111.16 |

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

GLP Construction Management, Inc.
Consulting Engineers & General Contractors

## INVOICE for SERVICES

| | | | |
|---|---|---|---|
| TO: | State Farm Insurance Company<br>P.O. Box 106110<br>Atlanta, GA 30348 - 6110 | Invoice #:<br>Date: | 11854<br>September 14, 2016 |

FOR: Claim #: 38 8W27 - 068
Todd Aaron
307 Barren Hill Road
Conshohocken, PA. 19428
BUILDING EVALUATION & REPAIR ESTIMATE

For professional services to evaluate the observable conditions at the subject residence as they related to a recent tree impact event, along with a site inspection, photos, meeting with the owner, as well as the preparation of an evaluation report and repair estimate for the above referenced claim.

Evaluation time = 11.0 hrs @ $295.00/hr.......... $ 3,245.00
For time spent reviewing the building finishes, features & damages, a site visit, photos, and preparation of a report & repair estimate

Travel expense
Mileage = 50 mi. @ $0.65/mile .... $ 32.50
Tolls = 2 each @ $1.80/each ... $ 3.60

Administrative time = 1.0 hr @ $80.00/hr.... $ 80.00
For administrative time to prepare and manage the file and documents as well as appointment scheduling.

Photos (stored) = 230 ea @ $0.75/ea ........ $ 172.50
Processing, storing, numbering and labeling of photos.

TOTAL INVOICED AMOUNT : ........................ $ 3,533.60

TIN# 23-2584870

THANK YOU!

Cc: FILE 11854INV.RC 8-16

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

# EXHIBIT D

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

# Holders Hill Property
# & Haywood Construction

Design-Build | Construction Management | General Contractors

1/18/17

Dear Dr Aaron:

**Re 307 Barren Hill Road, Conshocken, PA - Repairs**

Please find herewith a report of our findings and recommendations pertaining to the repairs and reconstruction of your house.

As I am sure you recall, I met with you in March of 2016 regarding building an addition to your house. Subsequently in June we discussed some options of how to add a freestanding garage with additional living space above. At this time I prepared existing drawings for design purposes of the existing 1st floor, and took photos documenting the space in it's existing condition.

I was very aware that the house in it's existing condition was a solid, well built, level and perfectly finished home. We discussed that nothing needed to be done to the 1st floor, and we would merely be investigating adding bedroom/ bathroom outside the existing space.

I was sorry to hear about the damage to your property in July caused by the tree falling through the end of the house, and that you had to find somewhere else to live.

In walking the property after the storm I noticed many parts of the house, and not simply the area that was hit directly by the tree, were out of alignment and generally felt different and uneven: drywall had cracked, floors buckled, windows are out of plumb, and now do not close tightly, and generally more of the house than one would expect had been damaged. After noticing that the floors now have a slope both on the 1st and 2nd level, we put a 6' level on obvious areas and we found pitch differences or about 1" over 6' in places that had definitely not been there before.

My attached drawing pages a1.1 (first floor) and a1.2 (2nd floor) show the areas we noticed had been effected structurally by this event. After conversations with Matt McCloskey of Whitemarsh township, he also had concerns about some of these areas, and hence declared the house condemned and unsafe to be lived in. We looked at the spaces described by the report compiled by GLP for State Farm insurance, and agree with most of their observations. As Mr McCloskey pointed out, we also saw that the main ridge was impacted, by the pressure from roof rafters and the damaged gable end ridge beam. This presents one significant difference to the required repairs presented by GLP, as we see it. In order to assess the extent of the overall damage, we would propose removing the finishes to the roof and pitched ceiling on the 2nd floor, 2nd floor hard wood finishes which have buckled, carrying out selective demolition to the first floor structure to assess soundness of supporting framing, and removing areas of the first floor hardwood and sub-floor to level the flooring in these locations.

The existing roof framing is 2x6 construction which, although appropriate in 1960 for finished space construction will not meet current codes for energy or load, and permit requirements which will have to be adhered to in order to re build this portion of the house. It is our understanding that your insurance requires us to rebuild to current requirements.

Based on the following critical factors:

- Pitched cathedral-style ceilings in the 2nd floor bedrooms
- Required repairs to the damaged structure

T: 267 536 9218
E: HoldersHillGroup@gmail.com

# Holders Hill Property
## & Haywood Construction

Design-Build | Construction Management | General Contractors

1/18/17

- Need to verify integrity of, and reattach and secure rafters to ridge beam
- Requirements for the structure to hold R38 insulation
- Leveling of floors - impact of tree caused them to buckle down the entire length of the house

The most cost effective way to rectify this part of the house is to remove the 2nd floor structure from above 1st floor ceiling, and re-frame the flooring as required for the 2nd floor to make it level. And construct a full story with new 2x12 roof rafters which will accommodate R-38 insulation for the ceiling and R21 for the walls. At this time, we will be able to assess the floor framing of the 2nd floor and after ensuring secure and straight connection to the structure below, we can either sister new joists along side existing, or add leveling structural layer to entire floor prior to adding a new finished floor material.

The following pages include descriptions the proposed work, scope, and timeline.

Please call me with any questions or concerns, my direct number is 267-335-7470

Sincerely,

Alex Davis-Booth

T: 267 536 9213
E: HoldersHillGroup@gmail.com

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

# Holders Hill Property
## & Haywood Construction

Design-Build | Construction Management | General Contractors

1/18/17

**Scope of repairs and construction in addition to superficial and structural damages outlined in report by GLP Construction Management:**

1. Prepare design documents describing requirements for structure and layout
2. Remove interior drywall at 1st and 2nd floor as indicated in drawings describing areas of selective demolition
3. Remove 1st & 2nd floor hardwood floor finish material, sub-floor.
4. Level 1st & 2nd floor framing, either sister new joists or replace as required, replace sub-floor and finish material.
5. Remove 2nd floor drywall, finishes, insulation, electrical, HVAC, and demolish existing roof and framing.
6. Verify existing structure supporting 2nd floor and roof per engineered documents as required, if necessary sister studs and framing members to straighten and secure supporting walls.
7. Verify vertical and horizontal bracing and
8. Frame new 2x6 exterior knee wall at height to accommodate new roof.
9. Frame new 2x12 roof with adequate space between rafters to accommodate code required insulation.
10. Refinish all interior space to the high standard previously enjoyed by the owner.

T: 267 536 9218
E: HoldersHillGroup@gmail.com

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

# Holders Hill Property
## & Haywood Construction

Design-Build | Construction Management | General Contractors

1/18/17

**Schedule:**

| Name | Begin date | End date | Duration |
|---|---|---|---|
| Design Phase - Fast track | 1/23/17 | 3/3/17 | 30 |
| Design | 1/23/17 | 2/10/17 | 15 |
| Permit | 2/13/17 | 3/3/17 | 15 |
| Project preparation | 2/13/17 | 3/17/17 | 25 |
| Sitework and weatherproofing | 2/13/17 | 2/17/17 | 5 |
| Demolition | 3/6/17 | 3/17/17 | 10 |
| Construction | 3/20/17 | 6/16/17 | 65 |
| Start Construction | 3/20/17 | 3/20/17 | 0 |
| Framing and Sheathing | 3/20/17 | 4/14/17 | 20 |
| Roofing | 4/17/17 | 4/21/17 | 5 |
| MEP | 4/17/17 | 5/12/17 | 20 |
| Finishes | 5/15/17 | 6/16/17 | 25 |
| Landscaping | 3/20/17 | 7/7/17 | 80 |
| Planting | 3/20/17 | 3/24/17 | 5 |
| Hard landscaping - driveway pavers | 6/19/17 | 6/30/17 | 10 |
| Final planting and cleanup | 7/3/17 | 7/7/17 | 5 |
| Completion | 7/10/17 | 7/10/17 | 0 |

As you can see from the above schedule, we anticipate the entire construction taking in the region of 6 months including design and permitting.

T: 267 536 9218
E: HoldersHillGroup@gmail.com

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

# Holders Hill Property
# & Haywood Construction

Design-Build | Construction Management | General Contractors
1/18/17

01/18/17

## Repair and renovations to 307 Barron Hill Road, Conshocken, PA

Based on Quote for construction approved by State Farm Insurance by GLI Construction Managers

| Additional work to GLP original quote | | GLI pricing | Comments | HHP/ Haywood estimate | Delta | Notes |
|---|---|---|---|---|---|---|
| | *** GLP Scope described and summarized below as noted *** | | | | | |
| | Sitework | $62,460.00 | Including new roof materials as described by GLI quote. | | | New roof framing approx $15,000 more than keeping existing structure size. |
| ADD | Framing & roof estimate | $4,380.00 | New structure, insulation | $18,650.00 | $14,470.00 | |
| ADD | Demo old roof | $0.00 | Demo for all additional work not included in GLI | $8,000.00 | $8,000.00 | |
| | 1st floor master bed-room | $11,398.31 | | $14,000.00 | $2,601.69 | Total additional floor leveling estimated at approximately $15,000, including additional work installing new flooring at areas that have been leveled. Where possible we will reuse existing flooring materials and add new to match. All to be refinished to match. |
| | 1st floor master closet | $1,229.66 | | $2,000.00 | $770.34 | |
| | 1st floor master bath | $567.56 | Level floor framing where applicable, install new sub and finish flooring. Scope to finish room includes same estimate as GLI for finishes, + additional $14,000 for new flooring. See delta differences | | | |
| | Foyer, hall and closets | $4,134.31 | | $5,000.00 | $865.69 | |
| ADD | 1st floor back bedroom | $1,820.83 | | $2,600.00 | $779.17 | |
| | 1st floor back bath | $904.06 | | | | |
| ADD | 1st floor living room | $5,917.13 | | $9,500.00 | $3,582.87 | $14,747.88 |
| ADD | Dining room | $1,251.88 | | $7,600.00 | $6,348.12 | |
| | Game room | $2,157.53 | | $3,000.00 | $842.47 | |
| | Kitchen | $330.00 | | | | |
| ADD | 2nd floor right bedroom New bedroom 3 | $1,232.04 | New construction | $13,000.00 | $11,767.96 | Removing roof, re-frame exterior walls, and connect interior walls to new ceiling. Maintain existing interior partitions if feasible. |
| ADD | 2nd floor left bedroom New bedroom 4 | $1,360.37 | New construction | $13,000.00 | $11,639.63 | |
| | General conditions | $8,900.00 | | | | |
| | *** End of scope of construction per GLP estimate *** | | | | | |
| | **Required scope not included in quote by GLP** | | | | | |
| | Basement | | | | | |
| ADD | Repair original vapor barrier | $0.00 | Removed by city at time of condemning house | $1,000.00 | $1,000.00 | |
| ADD | New carpet to match existing (no visible seams) | $0.00 | Removed by city at time of condemning house | $3,500.00 | $3,500.00 | |
| ADD | HVAC repairs | $0.00 | Condenser damaged at time of storm damage | $5,000.00 | $5,000.00 | |
| ADD | New stairs | $0.00 | | $2,800.00 | $2,800.00 | |
| ADD | Windows & new including int & ext trim | $0.00 | | $6,400.00 | $6,400.00 | |
| ADD | New bathroom | $0.00 | | $20,000.00 | $20,000.00 | |
| ADD | New electrical work @ 2nd floor | $0.00 | | $10,000.00 | $10,000.00 | |
| ADD | New Plumbing for 2nd floor bathrooms | $0.00 | Note: as removing roof bathrooms will have to be replaced. | $6,000.00 | $6,000.00 | |
| | | | | Delta | $116,967.94 | |
| | **Subtotal** | $103,043.68 | | | | |
| | **Construction total** | | | | $220,011.62 | |
| | 10% Overhead | | | | $22,001.16 | |
| | 10% Profit | | | | $22,001.16 | |
| | Design services estimate | | | | $18,000.00 | |
| | Tax/ Ins/ Permit; 3% | | | | $5,600.35 | |
| | **Estimated total project cost** | | | | $288,614.29 | |

T: 267 536 9218
E: HoldersHillGroup@gmail.com

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Note 1
Non conforming areas include:
• Stairs (too many treads)
• Rafters 2x6 construction, existing insulation is R13 to R21 Required to be R38 (2x12 construction)
Existing 2x6 rafters
Drywall cracks in walls/ceilings
Floor damage - slopes toward back of house
Stairs
Hall
Bedroom
Bathroom
Bedroom
Damage to ridge beam
Floor damage - slopes toward front of house
Drywall cracks
Note:
2nd floor not surveyed for original June 2016 Project, however overall floor outlines are correct. Rooms are depicted for design/ programming purposes, with no true location of partitions.
Drawing
a1.2
1-5-2017
Date
Revision
307
Barren Hill Road
Conshocken, PA
19428
Drawing
Existing 2nd Floor Plan
holders hill property, llc
design-build &
construction management
alex davis-booth
holdershillgroup@gmail.com
267 536-9218

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Drawing
a2.1

1-5-2017
Date
Revision

307
Barren Hill Road
Conshocken, PA
19428

Drawing
Repairs to 1st Floor

holders hill property, llc
design-build &
const uction management
alex davis-booth
holdershillgroup@gmail.com
2 6 7 5 3 6 - 9 2 1 8

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Note2
• Re-frame/ level out 2nd floor-floor framing. Retain ceiling to 1st floor if possible.
• New floor finish
• Re-frame roof rafters 2x12, new R38 Insulation, new roof
• Re-build stairs to 2nd floor including landing so max run is less than 14 risers, and 36" width
Add usable square footage
Possible new configuration of interior partitions
Dashed line indicates existing usable square footage
Add usable square footage
Add usable square footage
New Roof
Rebuild 2nd floor, maximize space as much as possible within current zoning restrictions to increase square footage
Drawing
a2.2
1-5-2017
Date
Revision
307
Barren Hill Road
Conshocken, PA
19428
Drawing
Repairs to 2nd Floor
holders hill property, llc
design-build &
construction management
alex davis-booth
holdershillgroup@gmail.com
267 536-9218

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

# EXHIBIT E

652666