**Swann, Tricia**

| | |
|---|---|
| From: | todd aaron <taaronmd@hotmail.com> |
| Sent: | Monday, February 27, 2017 12:58 PM |
| To: | Swann, Tricia |
| Subject: | Fwd: 388W27068 |
| Attachments: | PIPr01.pdf; PIPr02.pdf; PIEx01.pdf; PIEx02.pdf; Letter Dr Aaron - State Farm 1-18-17.pdf |

Sent from my iPhone

Begin forwarded message:

> From: Alex D-B <alexdavisbooth@gmail.com>
> Date: January 18, 2017 at 5:35:30 PM EST
> To: statefarmfireclaims@statefarm.com
> Cc: DR Todd Aaron <taaronmd@hotmail.com>
> Subject: 388W27068
>
> Dear Donald,
>
> I am working with Todd Aaron, who had a large tree fall through his house in the Summer of
> 2016. We are planning to rebuild the portion of his house as soon as we can secure a realistic
> budget.
> Currently State Farm has offered him an amount that will not cover the construction costs. I am
> sending you our proposal based on the original agreed upon costs, from GLI Construction
> Managers, with the added scope that was not included by State Farm, however will need to be.
> done in order to complete the project.
>
> Please see the attached proposal I sent to my client, with plans showing the damaged area.
> I have included a proposed layout for the 2nd floor including overall simplified construction
> methods that would yield additional square footage. This is diagrammatic, however based on
> square foot costs is feasible to construct for the proposed amount.
>
> Please call me with any questions.
> Regards,
>
>
> Alex Davis-Booth
>
> Mobile:267 335 7470 | alexdavisbooth@gmail.com

1

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

# EXHIBIT F

652666

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00



## GLP Construction Management, Inc.
Consulting Engineers & General Contractors

ADDITIONAL SUPPLEMENTAL REPORT PREPARED FOR
# STATE FARM INSURANCE COMPANY

CLAIM# 38 8W27 - 068
TODD AARON
307 BARREN HILL ROAD
CONSHOHOCKEN, PA. 19428

FILE:   11854B
FILE NAME:   11854DERD.DW
DISK:   R - 16
CODE:   032

APRIL 18, 2017

REPORT PREPARED BY:

GARY  L. POPOLIZIO,  P.E.
GLP CONSTRUCTION MANAGEMENT, INC.
P.O. BOX 168
MONTGOMERYVILLE, PA   18936

P.O. Box 168 • Montgomeryville, PA 18936 • (215) 997-7360 office • (215) 997-7362 fax

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Claim # 38 8W27-068
Todd Aaron
307 Barren Hill Road
Conshohocken, PA. 19428
Page 2 of 6

## PURPOSE:
The intent of this additional supplemental report and my third site inspection was to meet with Mr. Alex Davis-Booth at the property to provide a review of the observable conditions for the residence located at 307 Barren Hill Road in Conshohocken, Pennsylvania, and to address specific concerns toward the report of shifting of the upper main roof, floors, and some window framing assemblies had occurred, and to supplement my previous reports dated September 13, 2016 and February 9, 2017 based upon a reasonable degree of engineering and construction certainty.

## 3RD SITE VISIT:

|  |  |  |  |
|---|---|---|---|
| DATE: | March 17, 2017 | | |
| WEATHER: | Sunny, 29° F | | |
| CONTACT: | Mr. Alex Davis-Booth | - | Holders Hill Group |
|  | Mr. J. Kurt Straub, Esquire | - | Attorney for Insured |

## GENERAL CONDITIONS:
The general conditions and state of the residence located at 307 Barren Hill Road in Conshohocken, Pennsylvania continued to remained the same as those observed at the time of my prior initial site inspections conducted on August 5, 2016 and January 13, 2017. The home remained a single-family, two-story styled residential structure existing in the same configuration, style, and comprised of the same the material applications previously noted in my reports dated September 13, 2016 and February 9, 2017.

The state of the home continued to remain unoccupied and vacant as it did during my August 5, 2016 and January 13, 2017 inspections and has not been occupied by Mr. Aaron since the July 2016 fallen tree event. The front master bedroom area continued to exist with a tarp covering with no additional efforts to secure, protect, or upgrade the coverings over the impact damaged area of the dwelling.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Claim # 38 3W27-068
Todd Aaron
307 Barren Hill Road
Conshohocken, PA. 19428
Page 3 of 6

## ADDITIONAL BACKGROUND/HISTORY:

At the time of this third site inspection of the property, a conversation with Mr. Alex Davis-Booth was conducted to address his concerns regarding the building structure as they related to the July 2016 fallen tree that impacted the front portion of the dwelling. Pursuant to this conversation, the following overview was provided:

- Concerns that the fallen tree impacted the roof structure (including the ridge framing) over the master bedroom area of the dwelling resulting in a shift within the upper level of the home. This shift was believed to have occurred within the upper main roof, the 2nd floor level walls, and the floor framing over the 2nd floor area of the dwelling.
- The 2nd floor was believed to have sagged due to the transfer of forces from the master bedroom ridge/roof framing onto the upper portion of the home when the tree fell and struck the front portion of the dwelling.
- In addition, concerns were also expressed that deformation of the headers above the openings over the front living room window as well as the back dining room window units occurred as a result of forces from the fallen tree. An example of the deformation presenting a concern entailed a sag in the header over the large, front living room window assembly.
- It was also expressed that due to the distortion of the framing from the fallen tree, the most economical solution toward repair was to remove the framing members affected by this event. These areas encompassed the main ridge, roof framing, portions of the walls, and sections of the floor assembly.
- Specifics regarding corresponding movement within the interior finishes sufficient to support a distortion of the upper main roof framing and a shift in the 2nd floor level of the residence were not explained.
- A site inspection of the property was conducted by Mr. Alex Davis-Booth prior to the July 2016 fallen tree event with a direction (at that time) toward the possible construction of a detached structure to be built onto the property.

In addition to my conversations with Mr. Alex Davis-Booth, I visited the building department within the Whitemarsh Township building to inquire about recent activities including the existence of a condemnation notice for the subject residence. The file on the subject property was obtained with the only current items within the file for Mr. Aaron's residence entailed some 8 ½" x 11" sized sketches prepared by Alex Davis-Booth. No permits, applications, or record of any condemnation notice for the subject home was present in this property file.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Claim # 38 8W27-068
Todd Aaron
307 Barren Hill Road
Conshohocken, PA. 19428
Page 4 of 6

As a follow up to my visit to the township building, I contacted and spoke directly to Mr. Matthew T. McCloskey the Assistant Building Inspector and Codes Enforcement Officer for Whitemarsh Township regarding the subject property. From this source the following information was learned:

1. An inspection of the subject home occurred shortly after the tree fell onto the front portion of the residence.
2. A discuss with Mr. Aaron (that was reported to have occurred within kitchen area of the home) regarding occupying the master bedroom should be avoided until he could have it inspected by a design professional.
3. No condemnation notice or placement of any restrictions on the remaining home including the back 1st floor bedroom or bathroom areas was issued.
4. No restrictions regarding the 2nd floor level of the dwelling were imposed.
5. Damage to the home from the fallen tree was focused primarily toward the master bedroom area of the residence.

## ADDITIONAL OBSESRVATIONS:

During this third inspection of the property a review of the residence was again performed including additional observations of the wood framing over the master bedroom area of the subject home. A summary of my added observations has been presented below:

### General & Exterior:

- The features along the exterior of the home remained unattended with portions of the roof, cappings, gutters, etc. continued to be loose, dislodged, and hanging in place.
- The temporary tarp covering over the master bedroom area remaining in a similar condition as previously observed including being loose and not fully secured.
- The in-ground pool showed signs of the water level approaching the top of the pool coping with frozen water within the pool visible during this inspection of the property.
- The exterior soffits remained in place with no signs of any shifting, slippage, or separations incurred between the soffit material and the stone exterior on the home.
- The rake coverings on the upper gable ends also exhibited no signs of any recent shifting or separations present.
- The exterior stone and mortar materials around window and door units showed no signs of any recent shifting, cracks, or movement. These stable conditions were also present around the back dining room window as well as the front living room window openings.

Claim # 38 8W27-068
Todd Aaron
507 Barren Hill Road
Conshohocken, PA. 19428
Page 5 of 6

General – Interior:
- The interior of the home continued to remain unoccupied.
- The water service remained shut off and the thermostat was set on a heat setting of approximately 55° F.
- Undertaking an additional review of the corners of various windows, doors, and openings within the interior of the home (including the windows in the living and dining rooms) found the painted walls, jambs, and trim to remain stable with no indication of any recent shifting, movement, or cracks.

Master Bedroom roof framing:
- Access to the roof framing and attic space above the master bedroom area was afforded through a closet in the 2nd floor bedroom. From this vantage point the configuration of the ridge, rafters, and ceiling joists was available.
- The wood members along the outer gable end of the of this roof were visible crushed and broken. The members along the side closest to the 2nd floor bedroom remained stable and in place.
- The ridge board terminated at the sloped drywall ceiling section along the interior wall common to the 2nd floor bedroom as did the valley rafters. No signs of any damage or puncture to the interior drywall at this juncture was observed.

## ADDITIONAL DOCUMENT REVIEW:
In addition to my observations of the subject property and my prior review of various documents noted in my previous reports, additional documents were recently presented and were also incorporated into the preparation of this report. A summary of those added documents is listed below:

1. Email correspondence from J. Kurt Straub dated March 24, 2017 and March 30, 2017.
2. The email dated March 30, 2017 contained a series of thirty-seven (37) photos taken of the subject property with a date stamp of "03282017". These photos depicted the home in a state prior to the July 2016 fallen tree event. Some limited interior rooms within the home were shown with no photo of any of the 2nd floor living space provided.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Claim # 38 8W27-068
Todd Aaron
307 Barren Hill Road
Conshohocken, PA. 19428
Page 6 of 6

## ADDITIONAL CONCLUSIONS:

Based on my prior inspections and reports in conjunction with these supplemental observations, information, and document review, along with a reasonable degree of engineering and construction certainty the opinions contained within my reports dated September 13, 2016 and February 9, 2017 remain as previously stated and as supplemented below:

1. The additional information, discussions, observations, and review of the photos presented does not change my opinions regarding the extent of damage incurred to the subject home from the July 23, 2016 storm event causing a tree to fall onto the front portion of the home where the master bedroom was located. These conclusions are further supported by the following, but not limited to, examples:

   a. The configuration of the roof framing over the master bedroom area where the ridge board and valley rafters adjoin to the interior wall of the 2nd floor bedroom that lacks any cracking, bulging, or damage to the painted finishes at this juncture.

   b. The lack of any evidence of a lateral load imposed on the upper portion of the dwelling of any significance to distort or shift the wood framed assembly including the main roof structure, 2nd floor walls, or the floor assembly.

   c. The lack of any corresponding separations, cracks, or deformations within the interior finishes reflective of a movement within the wood structure to which the finishes are secured.

   d. The lack of evidence within the recently provided photos taken of the home prior to July 23, 2016 to support the removal of the 2nd floor assembly and additional building components outside those contained within my revised estimate February 9, 2017 (which addressed the finished basement area not available for review during my August 5, 2016 inspection of the subject dwelling).

   e. Information obtained directly from Whitemarsh Township personnel including a lack of any official condemnation notice regarding the habitability of the subject home outside the master bedroom.

2. I could find no evidence that the translation of energy from the fallen tree caused movement within the upper main roof, walls, or floor assemblies within this portion of the home.

I continue to reserve my right to amend or supplement this report should any new information, photos, or documents be presented, or if further clarifications are required. Photos taken at the time of my site inspections are in digital form at this time with the right to print and/or enlarge any of these photos in the future.

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

# EXHIBIT G

652606

# Fletcher Masonry
## & General Construction

### A division of J. Fletcher Companies LLC

Builder of pools, spas, ponds and fountains ~ All phases of masonry projects ~ Historic and general renovations
Custom design and build ~ Professional craftsmanship ~ Licensed ~ Fully insured

November 5th, 2016                                                      Invoice # 16-1105-1

# Invoice

| | |
|---|---|
| Name | Dr. Todd Aaron |
| Address | 307 Barren Hill Road, Conshohocken, PA 19428 |
| Project | storm dame clean up and repairs |
| Phone | 610) 329-1427 |
| e-mail | taaronmd@hotmail.com |

Description: Provide labor to perform storm damage cleanup and repairs:

- ☐ Storm damage clean up: July 28,29,30th remove debris from pool and treat water chemistry.  
  2 technicians, 3 (8 hour) days   @ 85.00                                       $ 4,080.00
- ☐ Replace or repair damaged cleaning/filtering apparatus:
  - Polaris 380 automatic cleaner (pressure side vacuum)              $ 899.95
  - Booster pump (ran dry and burnt motor)                           $ 418.70
  - Multi port valve:    (valve split from pressure)                 $ 210.94
  - FNS plus filter grid pack ( Fabric damaged by twig debris)       $ 275.60
  - Skimmer basket (cavitated and split)                             $ 21.20
  - Repair coping damage from tree branch  strikes                   $ 335.00

- ☐ Additional chemicals used:

| | | |
|---|---|---|
| • 10 gallons Muriatic acid to adjust pH | $ 79.90 | |
| • 25 lbs. DE (filtration media) | $ 35.00 | |
| • 3 Quarts Algaecide | $ 66.00 | |
| • 3 Quarts stain and scale preventer | $ 49.00 | |
| • 2 Quarts Magic blue  clarifier | $ 50.00 | |
| • 18 pounds chlorine | $ 108.00 | $ 387.90 |

Total for outlined invoice:                                             $ 6,629.29

Total now due:                                                          $ 6,629.29

*Terms: note: All invoices are due and payable upon receipt. Any invoice unpaid after 30 days will be subject to an interest charge and/or late fees of $10.00 minimum. The interest rate is 1.5% monthly. We appreciate your prompt remittance.*

If you have any questions regarding this invoice, please do not hesitate to contact us with your questions.  We sincerely appreciate the opportunity to extend our services for your project.

Jason Fletcher

Fletcher Masonry
& General Construction

P. O. Box 219 ~. Chadds ford, Pennsylvania 19317
Phone: 610) 513-7627 ~ Fax  610) 558-2207 ~ Home office: 610) 459-9976
E-mail: jfletcheren@gmail.com
www.jfletchercompanies.com
PA HIC# PA026633
DE Lic. # 2004204670

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

# EXHIBIT H

652606



December 12, 2016

TODD AARON
605 BARTRAM RD
FLOURTOWN PA 19031

State Farm Insurance Companies
Fire Claims
PO Box 106169
Atlanta, GA 30348-6169
Fax 844 236 3645

RE:     Claim Number:     38-8W27-068
        Policy Number:    78-PZ-7637-4
        Date of Loss:     July 23, 2016

Dear Mr. Aaron:

Please allow this letter to serve as a follow-up from our discussion on December 9th, 2016.

We have previously calculated that the home should be restored to live in four month from the date of the actual cash value payment made on **September 23, 2016**. We are able to extend your coverage for ALE an additional four months. Therefore, we will not be responsible for any additional living expenses after **March 12, 2017**.

In accordance with the provisions with the Additional Living Expense coverage under our insured's Homeowners Policy we have determined that repairs to the household should be completed within this time period. Please refer to Section – Coverages of our Homeowners Insurance Policy, FP-7955 which states:

### COVERAGE C - LOSS OF USE

1.   **Additional Living Expense.** When a Loss Insured causes the residence premises to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

Any unnecessary delays in the rebuilding process related to the building contractor's actions or lack there-of, will not be deemed a valid reason to extend the Additional Living Expense coverage. It is incumbent upon you to make sure the building contractor completed the restoration of the home on, or before, March 12, 2017.

*Providing Insurance and Financial Services.*                                    Home Office, Bloomington, IL

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

TODD AARON
38-8W27-068
Page 2

Any delays on your part, i.e. delaying selection of materials, authorizing repairs, or finding a contractor, that increased the period of restoration beyond the cutoff date will be your responsibility.

Additionally, we are not responsible for any altercations, improvement, upgrades, and/or additions you elect to have completed at the time the repairs are being completed. We are not responsible for these items that are above the actual necessary repairs from the loss. Any increase in the period of restoration due to any altercations, improvement, upgrades, and/or additions you elect to have completed at the same time will be your responsibility.

Please be reminded of the following policy conditions:

## SECTION I - CONDITIONS

2.　**Your Duties After Loss.** After a loss to which this insurance may apply, you shall see that the following duties are performed:

    a.　give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

    b.　protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

    c.　prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

    d.　as often as we reasonably require:

        (1)　exhibit the damaged property;

        (2)　provide us with records and documents we request and permit us to make copies;

        (3)　submit to and subscribe, while not in the presence of any other **insured**:

            (a)　statements; and

            (b)　examinations under oath; and

        (4)　produce employees, members of the **insured's** household or others for examination under oath to

TODD AARON
38-8W27-068
Page 3

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

the extent it is within the insured's power to do so; and

e.   submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1)   the time and cause of loss;

(2)   interest of the insured and all others in the property involved and all encumbrances on the property;

(3)   other insurance which may cover the loss;

(4)   changes in title or occupancy of the property during the term of this policy;

(5)   specifications of any damaged building and detailed estimates for repair of the damage;

(6)   an inventory of damaged or stolen personal property described in 2.c.;

(7)   receipts for additional living expenses incurred and records supporting the fair rental value loss; and

(8)   evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

Finally, we are required to advise you of the following policy condition as stated in the Homeowners Policy FP-7955:

## SECTION I - CONDITIONS

6.   **Suit Against Us**. No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

By specifying the above-grounds, State Farm Fire and Casualty Company does not intend to waive by rather specifically reserve all of its right including other defenses which may be applicable to this claim.

TODD AARON
38-8W27-068
Page 4

If you have any questions regarding this portion or your claim, please contact us directly at the number listed below.

Sincerely,

Donald Worrell, CPCU®
Claim Specialist
844 529 5982 ext. 2532746987
E-mail statefarmfireclaims@statefarm.com
State Farm Fire and Casualty Company

01/347/2493658

cc:     38-6169 Charles F. Monahan

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

# EXHIBIT I

652666



March 14, 2017

J KURT STRAUB ESQUIRE
CENTURY SQUARE WEST
1500 MARKET ST STE 3400
PHILADELPHIA PA 19102

State Farm Insurance Companies
Fire Claims
PO Box 106169
Atlanta, GA 30348-6169
Fax 844 236 3656

RE:   Claim Number:   38-8W27-066
      Policy Number:   78PZ76374
      Date of Loss:    July 23, 2016
      Insured:         Todd Aaron

Dear Kurt Straub:

Please allow this letter to serve as a follow-up from my message for you on March 7 and March 13, 2017.

Upon further review of the Additional Living Expense coverage, final cut-off time of March 12, 2017, it would appear to be reasonable to provide four months from the date of the Additional Living Expense letter which was originally sent on December 12, 2016. As such, the actual cut-off will be April 12, 2017, four months from the date the original letter was sent.

In regards to the structure estimate, GLP has completed a review of the insureds contractors estimate dated January 18, 2017 during his second inspection and found nothing in the estimate to support the need for Mr. Popolizio to modify his original estimate. Furthermore, the insureds contractor's estimate includes scope that is not related to this loss, specifically improvements to the existing home before the date of loss, unrelated to restoring the existing dwelling to its pre-loss condition.

Lastly, your letter dated March 13, 2017 notes concern with State Farm unable to provide coverage for the insureds below ground pool. We are under the impression the insured fixed the sections of the utilities before the date of the loss, as the piping has dates time stamped from January 30th 2015 which would be consistent with replacements undertaken prior to the July 23rd date of loss we have on file.

Please refer to the following policy conditions:

### SECTION I - COVERAGES

#### COVERAGE C - LOSS OF USE

1.   **Additional Living Expense.** When a Loss Insured causes the residence premises to become uninhabitable, we will cover the

Providing Insurance and Financial Services

Home Office, Bloomington, IL

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

J KURT STRAUB ESQUIRE
38-8W27-068
Page 2

necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

## SECTION I - LOSSES INSURED

### COVERAGE A - DWELLING

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in SECTION I - LOSSES NOT INSURED.

## SECTION I - LOSSES NOT INSURED

1.    We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   g.    wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

   h.    corrosion, electrolysis or rust;

   j.    contamination;

   k.    smog, smoke from agricultural smudging or industrial operations;

   l.    settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

   However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

3.    We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

   b.    defect, weakness, inadequacy, fault or unsoundness in:

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

J KURT STRAUB ESQUIRE
36-8W27-068
Page 3

(1)  planning, zoning, development, surveying, siting;

(2)  design, specifications, workmanship, construction, grading, compaction;

(3)  materials used in construction or repair; or

(4)  maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the residence premises; or

c.  weather conditions.

However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

Please refer to the following policy conditions:

## SECTION I - CONDITIONS

2.  Your Duties After Loss. After a loss to which this insurance may apply, you shall see that the following duties are performed:

a.  give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

b.  protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

J KURT STRAUB ESQUIRE
38-8W27-068
Page 4

c.    prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

d.    as often as we reasonably require:

    (1)    exhibit the damaged property;

    (2)    provide us with records and documents we request and permit us to make copies;

    (3)    submit to and subscribe, while not in the presence of any other insured:

        (a)    statements; and

        (b)    examinations under oath; and

    (4)    produce employees, members of the insured's household or others for examination under oath to the extent it is within the insured's power to do so; and

e.    submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

    (1)    the time and cause of loss;

    (2)    interest of the insured and all others in the property involved and all encumbrances on the property;

    (3)    other insurance which may cover the loss;

    (4)    changes in title or occupancy of the property during the term of this policy;

    (5)    specifications of any damaged building and detailed estimates for repair of the damage;

    (6)    an inventory of damaged or stolen personal property described in 2.c.;

    (7)    receipts for additional living expenses incurred and records supporting the fair rental value loss; and

J KURT STRAUB ESQUIRE
38-8W27-068
Page 5

       (8)    evidence or affidavit supporting a claim under the
                Credit Card, Bank Fund Transfer Card, Forgery and
                Counterfeit Money coverage, stating the amount
                and cause of loss.

    6.    **Suit Against Us.** No action shall be brought unless there has
          been compliance with the policy provisions. The action must be
          started within one year after the date of loss or damage.

By specifying the above grounds for denial, State Farm Fire and Casualty Company does not
intend to waive, but rather specifically reserves all of its rights, including other defenses which
may be applicable to this claim.

Should you have any questions regarding this claim, please contact me at the telephone
number listed below.

Sincerely,

Donald Worrell, CPCU©
Claim Specialist
844 529 5982 ext 2532746987
E-mail statefarmfireclaims@statefarm.com
State Farm Fire and Casualty Company

01/373/2538001

## VERIFICATION

I hereby state that I am the Plaintiff in this action and I verify that the information set forth in the foregoing Complaint is true and correct to the best of my information, knowledge, and belief. The undersigned understands that the statements therein are made subject to the penalties of 18 PA. C.S. Section 4904 relating to unsworn falsification to authorities.

_____
Todd Aaron, M.D.

Dated: _____ May 20 _____, 2017

Case# 2017-07615-9 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

5154740

OBERMAYER REBMANN MAXWELL & HIPPEL LLP
BY:   J. Kurt Straub, Esquire (Atty. ID No. 27722)
      Tricia A. Swann, Esquire (ID No. 83716)
Centre Square West, Suite 3400                          Attorneys for Plaintiff,
1500 Market Street                                      Todd Aaron, MD
Philadelphia, PA 19102
Phone: (215) 665-3000
Facsimile: (215) 665-3165

| | |
|---|---|
| TODD AARON, MD<br>605 Bartram Court<br>Flourtown, PA 19031,<br><br>                                    *Plaintiff*<br>   v.<br><br>STATE FARM FIRE AND CASUALTY<br>COMPANY<br>1003 Germantown Pike<br>Plymouth Meeting, PA 19462,<br>                             *Defendant.* | MONTGOMERY COUNTY<br>COURT OF COMMON PLEAS<br><br>APRIL TERM, 2017<br><br>NO. 2017-07615<br><br>COMPLAINT AND JURY TRIAL<br>DEMAND |

## CERTIFICATE OF SERVICE

I, TRICIA A. SWANN, ESQUIRE, attorney for Plaintiff, hereby certify that on

May 23, 2017, a true and correct copy of the Complaint was served via first class mail

upon the following as follows:

Yolanda Konopacka DeSipio, Esquire
Robert T. Grolnick, Esquire
Bennett, Bricklin & Saltzburg LLC
960 Harvest Drive
Building B, Suite 100
Blue Bell, PA 19422-1900

*Tricia A. Swann*

_____
Tricia A. Swann, Esquire

20

5153124

Case# 2017-07615-10 Docketed at Montgomery County Prothonotary on 05/23/2017 1:57 PM, Fee = $0.00

# EXHIBIT "2"

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TODD AARON, M.D. | : | |
| | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | No: |
| STATE FARM FIRE AND | : | |
| CASUALTY COMPANY | : | |

### AFFIDAVIT

I, Jim Larson, declare as follows:

1.    I am an adult over the age of 18 and am competent to make this Declaration. I have personal knowledge of the facts stated herein.

2.    I am employed by State Farm Mutual Automobile Insurance Company ("State Farm Mutual") as an Assistant Vice President-Accounting at State Farm Mutual's corporate headquarters in Bloomington, Illinois. I have been employed by State Farm Mutual for over 35 years in various accounting functions, and I oversee the department that prepares and files the Annual Statements and related filings for State Farm Mutual and its property and casualty affiliates, including State Farm Fire and Casualty Company ("State Farm Fire").

3.    I am also an Assistant Secretary-Treasurer of State Farm Fire.

4.    State Farm Fire is a stock insurance company organized and incorporated under the laws of the State of Illinois. State Farm Fire's statutory home office and main administrative office, as reported in its Annual Statements filed with the state regulatory authorities, has been located at its corporate headquarters at One State Farm Plaza, Bloomington, Illinois for at least the past ten years and has been located in Bloomington, Illinois since State Farm Fire's inception in 1935.

5.    State Farm Fire's books and records are maintained in its home office, its officers are elected or appointed primarily at its home office, and its Board of Directors meetings are held

1

primarily at its home office.  Its directors are also elected primarily at its home office.

6.    State Farm Fire's functional departments are headquartered at its home office, including its P&C Actuarial Department (which drafts its policy forms); its P&C Underwriting Department (which creates its underwriting standards); its P&C Claims Department; its Human Resources Department; its Systems Department; and its Administrative Services Department, among others.

7.    State Farm Fire's principal officers are located at its home office. State Farm Fire's federal income tax returns and state premium tax returns are prepared and filed from its home office.

I declare under penalty of perjury that the forgoing is true and correct.

Executed this the 9ᵀᴿ day of June, 2017, at Bloomington, Illinois.

_____
JIM LARSON

Subscribed and sworn before me on this the 9ᵀᴿ day of June, 2017.

_____
Notary Public for the State of Illinois

OFFICIAL SEAL
Karen Hamilton
NOTARY PUBLIC - STATE OF ILLINOIS
My Commission Expires: 01/07/2018

2