IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| TODD AARON, M.D., | |
|---|---|
| *Plaintiff,* | |
| v. | CIVIL ACTION No. 17-2606 |
| STATE FARM FIRE AND CASUALTY COMPANY, | |
| *Defendant.* | |

**PAPPERT, J.** March 30, 2018

**MEMORANDUM**

Todd Aaron's home was damaged when a tree fell onto its roof during a storm. He sued his insurer, State Farm Fire and Casualty Company, after a disagreement arose over State Farm's handling of the claim and the cost to repair the house. Aaron asserted claims for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty and statutory bad faith. The Court granted State Farm's motion to dismiss and strike various claims and alleged damages, leaving only the breach of contract and bad faith counts. (ECF Nos. 13 & 14.)

At the close of discovery, State Farm moved for summary judgment on Aaron's bad faith claim, as well as those aspects of the breach of contract claim seeking damages for lost income and purported diminution in the value of his Mercedes. (ECF No. 57.) After holding oral argument (ECF No. 78), the Court granted the motion in its entirety (ECF No. 79). The reasons for entering judgment in favor of State Farm with respect to the lost income and devalued car were stated on the record at the hearing. This Memorandum explains the Court's decision on the bad faith claim.

1

I

On July 23, 2016, a large tree fell onto the front first floor bedroom of Aaron's home, causing significant damage. (Pl.'s Resp. in Opp'n, Ex. B, ECF No. 63; Def.'s Mot. for Summ. J., Ex. H at SF0068–69, ECF No. 57.) He contacted State Farm that day to initiate a claim and on the 24th and 25th, told the insurer the tree caused structural damage and rendered his home uninhabitable. (Def.'s Mot., Ex. H at SF0067–69.) State Farm immediately began working with Aaron to make alternative living arrangements and process his claim. (*Id.* at SF0066–67, SF0069.)

On July 29, State Farm claim specialist Ryan Chapple and Aaron inspected the house. (*Id.* at SF0065–66.) Chapple determined that an expert would be needed to assess, among other things, the possibility of structural damage to the home. (*Id.*) State Farm thereafter retained Gary L. Popolizio, P.E., a licensed professional engineer and general contractor, to assist in the investigation. (*Id.* at SF0065; Def.'s Mot., Ex. I.)

On August 5, Popolizio inspected the home with Aaron and Chapple. (Def.'s Mot., Ex. H at SF0064–65; Def.'s Mot., Ex. K.) In his September 13 report and estimate, Popolizio concluded that the tree damage was "focused primarily toward the front Master Bedroom area where the greatest effects of the impact were visible and included the wood roof framing[.]" (Def.'s Mot., Ex. K at SF1443; *see* Def.'s Mot., Ex. H at SF0062.) He noted other damage throughout the home, including the need to replace the metal roof and hardwood flooring throughout the first floor. (*Id.*) The report stated that his estimate was based on the conditions visible at the time of his inspection and that there was the potential that unforeseen damage could be discovered during restoration. (Def.'s Mot., Ex. K at SF1444.) Popolizio recommended that restoration

work be done by qualified professionals and that "[i]tems regarding the building structure, components, or load bearing systems . . . be reviewed by an appropriate licensed design professional." (*Id*.) Similarly, Popolizio told Chapple that he believed the home was "structurally ok" but said there was a "good chance" reconstruction could expose hidden damage. (Def.'s Mot., Ex. H at SF0064; Resp. in Opp'n, Ex. C ("Chapple Dep.") at 85:6–17.) Based on his assessment of the damage, he estimated the cost of repairs at $119,111.16 and State Farm paid Aaron this amount on September 23. (Def.'s Mot., Ex. K at SF1451; Def.'s Mot., Ex. H at SF0023.)[1]

On November 7, Aaron informed State Farm that its estimate was "significantly less" than those he received from various contractors and that he would be sending an itemized estimate for State Farm's review. (*Id*. at SF0059.) State Farm noted that any estimate received should be sent to its expert. (*Id*.) Aaron called again on December 12 to complain that State Farm's estimate was insufficient but, as of that date, had not yet provided State Farm with any estimates from his contractors. (*Id*. at SF0057.)

On January 18, 2017, State Farm received a report and estimate from Alex Davis-Booth, a general contractor. (Def.'s Mot., Ex. H at SF0044; Def.'s Mot. to Exclude Davis-Booth, Ex. D, ECF No. 58.) The report stated that he "agree[d] with most of [Popolizio's] observations[,]" however, he also "saw that the main ridge was impacted" and suggested additional repairs to the "superficial and structural damages outlined in [Popolizio's] report[.]" (Def.'s Mot., Ex. N at SF1023, SF1025.) Davis-Booth proposed "removing the finishes to the roof and pitched ceiling on the 2nd floor, 2nd floor

---

[1] The replacement cost value was $131,185.96, with $119,111.16 being the actual cash value. (Def.'s Mot., Ex. K at SF1451.) State Farm paid Aaron the actual cash value, which is the replacement cost value minus depreciation, under Aaron's homeowner's policy. (Def.'s Mot., Ex. H at SF0023, SF0062.) Aaron did not receive State Farm's check until October because it was sent to his permanent address, not his temporary residence. (Resp. in Opp'n at 7.)

3

hardwood finishes . . . [and] carrying out selective demolition to the first floor structure to assess soundness of supporting framing[.]" (*Id.* at SF1023.) He further recommended that the "most cost effective way" to repair the home was to "remove the 2nd floor structure from above the 1st floor" to assess the second floor framing and then reconstruct a full second story consistent with current code requirements. (*Id.* at SF1024.) Davis-Booth estimated the cost of this work to be $288,614.29. (*Id.* at SF1027.) State Farm sent the estimate to Popolizio no later than January 19. (Def.'s Mot., Ex. H at SF0044.)

Popolizio issued a second report and estimate on February 9, following another site inspection and review of Davis-Booth's report and estimate. (Def.'s Mot., Ex. Q.) The purpose of the second inspection was to assess certain items that had not been included in the first review, including the HVAC system, basement and in-ground pool. (*Id.* at SF0993.) Popolizio's main conclusions regarding damage to the home remained the same. (*Id.* at SF0997.) Specifically, he stated that Davis-Booth's estimate was "directed toward improvements to the existing home, contains areas and items of work that would be unrelated toward restoring the original dwelling back to its pre-impact condition, and includes costs towards work that was [previously] being considered[.]" (*Id.* at SF0999.)

On February 17, State Farm discussed the discrepancy in proposed renovation costs with Aaron, who apparently demanded payment consistent with Davis-Booth's estimate. (Def.'s Mot., Ex. H at SF0037.) State Farm explained that the settlement amount was based on its expert engineer's estimate and opinion, who believed that items in Davis-Booth's estimate were related to improving the home rather than

restoring it to its pre-storm condition. (*Id*.) State Farm offered to put the experts in touch to discuss and resolve any disagreements. (*Id*.) A similar offer was made in a February 23 letter from State Farm to Aaron. (Def.'s Mot., Ex. R at SF0809.) Shortly thereafter, Aaron retained counsel. (Def.'s Mot., Ex. H at SF0035.)

State Farm then arranged for Popolizio to inspect Aaron's home a third time on March 17, along with Davis-Booth and Aaron's counsel. (*Id*. at SF0029–31.) The purpose of this inspection was to meet Davis-Booth at the property and address his concerns. (Def.'s Mot., Ex. T at SF1564.) Specifically, Davis-Booth believed there was "distortion of the framing from the fallen tree" and that "the most economical solution toward repair was to remove the framing members . . . [including] the main ridge, roof framing, portions of the walls, and sections of the floor assembly." (*Id*. at SF1565.)

Following the inspection, Popolizio prepared his third report, dated April 18, which stated that his opinion regarding damage remained the same. (Def.'s Mot., Ex. T.) The report noted a "lack of any evidence of a lateral load imposed on the upper portion of the dwelling of any significance to distort or shift the wood framed assembly" and a "lack of any corresponding separations, cracks, or deformations within the interior finishes reflective of a movement within the wood structure[.]" (*Id*. at SF1568.) Popolizio found "no evidence that the translation of energy from the fallen tree caused movement within the upper main roof, walls, or floor assemblies within this portion of the home" and no evidence "to support the removal of the 2nd floor assembly." (*Id*.)

Popolizio inspected Aaron's home yet again on July 26, 2017. (Def.'s Mot., Ex. V.) At the time, the home was under construction and the structural components were exposed. (*Id*. at 3.) Popolizio then prepared his fourth and final report on January 8,

5

2018, in which he stated that "there continues to remain no evidence that any force from the fallen tree caused a shift or movement within the main roof structure or framing members requiring their removal and/or replacement." (*Id.* at 17.)

II

A

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A mere scintilla of evidence in support of the non-moving party will not suffice; there must be evidence by which a jury could reasonably find for the non-moving party. *Id.* at 252. Summary judgment is appropriate where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

B

Pennsylvania's bad faith statute provides that the court may award interest, punitive damages, and court and attorney's fees if it "finds that the insurer has acted in bad faith toward the insured[.]" 42 Pa. Cons. Stat. § 8371. Courts have defined "bad faith" as "any frivolous or unfounded refusal to pay proceeds of a policy." *Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000) (citation omitted).

To recover on a bad faith claim, a claimant is required to show by clear and convincing evidence that: (1) the defendant insurer did not have a reasonable basis for denying the policy benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis when it denied the claim. *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017); *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 522 (3d Cir. 2012) (citation omitted). "[M]ere negligence or bad judgment does not constitute bad faith; knowledge or reckless disregard of a lack of a basis for denial of coverage is necessary." *Id.* at 523 (citation omitted); *see also id.* ("Even questionable conduct giving the appearance of bad faith is not sufficient to establish it so long as the insurer had a reasonable basis to deny coverage." (citing *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004)). "Bad faith claims are fact specific and depend on the conduct of the insurer *vis a vis* the insured." *Padilla v. State Farm Mut. Auto. Ins. Co.*, 31 F. Supp. 3d 671, 675 (E.D. Pa. 2014) (citation omitted).

The duty of good faith "includes the duty to investigate a claim fairly and objectively[.]" *Emp'rs Mut. Cas. Co. v. Loos*, 476 F. Supp. 2d 478, 495 (W.D. Pa. 2007) (citation omitted). To meet this standard, the insurance company "simply must show [that] it conducted a review or investigation sufficiently thorough to yield a reasonable

7

foundation for its actions." *Id*. (quoting *Cantor v. Equitable Life Assurance Soc'y*, No. 97–CV–5711, 1999 WL 219786, at *3 (E.D. Pa. 1999)). "[A]n insurance company is not required to demonstrate its investigation yielded the correct conclusion or even that its conclusion more likely than not was accurate. The insurance company also is not required to show the process by which it reached its conclusion was flawless or that the investigatory methods it employed eliminated possibilities at odds with its conclusion." *Krisa v. Equitable Life Assurance Soc'y*, 113 F. Supp. 2d 694, 704 (M.D. Pa. 2000) (quoting *Cantor*, 1999 WL 219786 at *3).

To prevail on a bad faith claim, Aaron must meet a "heightened standard" with "evidence 'so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith.'" *Post*, 691 F.3d at 523 (quoting *Bostick v. ITT Hartford Grp.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999)). Mere insinuation is insufficient. *Employers Mut.*, 476 F. Supp. 2d at 491 (quoting *Terletsky v. Prudential Property*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). "[P]laintiff's burden in opposing a summary judgment motion is commensurately high in light of the substantive evidentiary burden at trial." *Post*, 691 F.3d at 523 (quoting *J.C. Penney*, 393 F.3d at 367).

III

The record evidence shows that State Farm's handling of Aaron's claim was neither frivolous nor unfounded. Throughout the claims process, State Farm relied on its expert, a licensed professional engineer and general contractor, to assess and estimate the damage to Aaron's home. Popolizio's reports and estimates provided State

8

Farm with a "reasonable basis" for handling Aaron's claim as it did.  *See, e.g.*, *Walter v. Travelers Pers. Ins. Co.*, No. 12-0346, 2016 WL 6962620, at *7 (M.D. Pa. 2016).

Aaron contends that State Farm "shuts its eyes to hidden structural damage" by conducting merely a visual inspection of his home.  (Pl.'s Br. in Opp'n at 3.)  He asserts that he, Whitemarsh Township and Chapple put State Farm on notice that the home sustained structural damage but that the insurer was content with Popolizio's "visual only" inspection that disregarded such damage.  (*Id.* at 19.)  Aaron is, of course, free to disagree, but the record demonstrates that Popolizio's four inspections, individually and collectively, were sufficiently thorough.  Notably, his first inspection covered the entirety of the home and documented all identifiable damage, including "hairline sized cracks."  (Def.'s Mot., Ex. K at SF1442.)  Although only a visual inspection, he accounted for any structural damage, or evidence thereof, that he observed.  For example, the report noted damage to the "roof framing members" in the master bedroom where the tree impacted.  (*Id*. at SF1443.)  This is confirmed by Davis-Booth's report, which suggested repairs above and beyond the "superficial and structural damages outlined in [Popolizio's] report."  (Def.'s Mot., Ex. N at SF1023, SF1025.)

Aaron's assertion that Popolizio ignored structural damage is based on an alleged "admission" in his initial report and comment to Chapple that there was a "good chance" that hidden damage could be revealed during reconstruction.  (Br. in Opp'n at 19; Hr'g Tr. at 20.)  This purported "admission" is not what Aaron makes it to be.  Popolizio acknowledged that evidence of further damage could be revealed during restoration and that work should be done by qualified professionals, not exactly thoughts and observations outside the mainstream.  Further, while the comment to

Chapple, if made in isolation, may have raised the issue of whether State Farm needed to investigate further, the statement was prefaced by Popolizio's conclusion that the home was "structurally ok." (Def.'s Mot., Ex. H at SF0064.) State Farm was not obligated to open up the walls and ceiling of Aaron's home (or as Aaron's counsel called it at oral argument, to preform "destructive testing" (Hr'g Tr. at 16–17)) without a recommendation from its expert that it needed to do so.

In total, Popolizio inspected the property four times. One inspection was specifically geared towards addressing Aaron and Davis-Booth's concerns over potential structural damage. In that report, which confirmed his initial findings, Popolizio specifically noted that he found "no evidence that the translation of energy from the fallen tree caused movement within the upper main roof, walls, or floor assemblies within this portion of the home." (Def.'s Mot., Ex. T at SF1568.) The final inspection (although conducted after litigation began) allowed Popolizio to view the structural components of the home, which confirmed his prior findings. (Def.'s Mot., Ex. V.)

Aaron's argument that it was "extreme bad faith" for State Farm to continue to rely on Popolizio after receiving Davis-Booth's report likewise fails. (Br. in Opp'n at 3.) The duty of good faith does not require State Farm to adopt its insured's position on the extent of damage, the "most economical approach" to repair the home or the value of a claim. *See, e.g.*, *O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901, 910 (Pa. Super. Ct. 1999) ("[I]n absence of evidence revealing dishonest purpose, it is not bad faith for insurer to aggressively investigate and protect its interests." (citing *Jung v. Nationwide Mut. Fire Ins. Co.*, 949 F. Supp. 353, 360 (E.D. Pa.1997)). The record evidence reveals no more than a dispute over how much it should cost State Farm to restore Aaron's house to its

pre-storm condition.[2] The parties' experts can present their estimates and reasoning to the jurors, and they can decide who is correct.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[2] At oral argument, Aaron's counsel made additional arguments that certain facts were indicative of bad faith. For example, counsel argued that State Farm employee Donald Worrell did not investigate the claim or review the competing expert reports (Hr'g Tr. at 28 – 29), that Popolizio was wrong about the way the house was constructed (*id*. at 33), that State Farm "drug its feet" inspecting the HVAC and pool (*id*. at 34), and that State Farm took too long to investigate the claim (*id*. 37). State Farm promptly responded to Aaron's claim and the other facts, even if true, do not amount to "clear and convincing evidence" that State Farm's investigation was insufficient or that it lacked a reasonable basis for its handling of the claim.